(No. 79083.—

MILDRED SHIMANOVSKY *et al.*, Appellees, v. GENERAL MOTORS CORPORATION, Appellant.

*Opinion filed February 20, 1998.*

114

HEIPLE, J., joined by HARRISON, J., dissenting.

David R. Reed, Hugh C. Griffin and John T. Williams, of Lord, Bissell & Brook, and Alex Dimitrief and J. Robert Robertson, of Kirkland & Ellis, all of Chicago, for appellant.

John B. Schwartz and Stephen J. Caron, of John B. Schwartz & Associates, of Chicago, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiffs, Mildred and Almarvin Shimanovsky, filed a complaint in the circuit court of Cook County alleging that a defect in their automobile caused a crash in which Mildred suffered severe injuries. The automobile was manufactured and designed by defendant, General Motors Corporation. The circuit court granted defendant's motion to dismiss plaintiffs' cause of action under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)), as a discovery sanction. The appellate court affirmed in part and reversed in part. 271 Ill. App. 3d 1. This court granted defendant's petition for leave to appeal (166 Ill. 2d R. 315(a)). We affirm the judgment of the appellate court.

## BACKGROUND

Based on the pleadings, discovery materials, motions and the responses thereto, the facts are as follows. On July 7, 1985, Mildred was driving her 1982 Chevrolet Caprice on an interstate highway in Cook County. The automobile suddenly lost power-steering control, causing it to swerve and strike a guard rail on the right side of the road and then rebound across all lanes of traffic and strike a concrete barrier on the opposite side of the road. Mildred suffered severe injuries as a result of the crash.

Soon after the accident, plaintiffs' counsel retained John Stilson, a mechanical engineer, to investigate whether the automobile possessed a defect which may have caused the crash. Stilson's initial inspection of the automobile did not reveal any defect which would result in a loss of power-steering control. Thus, Stilson determined that an internal inspection of the automobile's power-steering mechanism was necessary. On September 20, 1985, Stilson removed the power-steering mechanism from the automobile and disassembled it.

The internal inspection revealed that various components of the power-steering mechanism were damaged by the crash. In addition, grooves were discovered in one of the power-steering components. Stilson recommended to plaintiffs' counsel that a metallurgist be retained to determine whether the grooves were a result of the crash or whether they indicated a possible defect. Consequently, plaintiffs' counsel hired metallurgist Lyle Jacobs.

In October 1985, Jacobs examined the power-steering mechanism and concluded that it was necessary to section some of the components in order to determine the cause of the grooves. Accordingly, Jacobs sectioned the components and performed various tests on the sectioned pieces. As a result of these tests, Jacobs concluded that the grooves were not damaged from the crash, but rather were the result of long-term wear. To support his conclusion, Jacobs provided a written report and 27 photographs which documented the various tests and analysis he performed on the power-steering mechanism. Based on Jacobs' findings, Stilson, the engineering expert, concluded that wear and deterioration in the power-steering mechanism caused the automobile's power steering to fail.

On June 16, 1986, plaintiffs filed a complaint alleging the accident occurred because the power-steering mechanism in plaintiffs' automobile was "defectively manufactured, fashioned, fabricated and designed" by defendant. On July 24, 1986, defendant filed a written request, pursuant to Supreme Court Rule 214 (166 Ill. 2d R. 214), seeking production by plaintiffs of any documents pertaining to expert examination of the automobile. Defendant did not, however, seek production of the automobile or any of its components. On March 11, 1987, plaintiffs filed discovery answers which indicated that the power-steering mechanism was examined and tested

by experts and that Jacobs had prepared a report regarding his particular tests. Although the record does not indicate the specific date, the report was delivered to defendant early in the litigation.

According to defendant's motion to dismiss, defendant's own experts first viewed the automobile and its parts on September 28, 1989, while the evidence was still in plaintiffs' possession. However, defendant did not seek production of the actual power-steering components until December 23, 1991, when it moved to compel Stilson to produce the automobile parts at his deposition (166 Ill. 2d R. 219(a)). The court granted defendant's motion to compel and, accordingly, Stilson produced the power-steering components at his deposition on January 8, 1992.

Defendant's experts examined the power-steering components some time in January 1992. On February 10, 1992, defendant filed answers to interrogatories containing the conclusions of its own engineers and metallurgist. The experts opined that the plaintiffs' automobile contained no defect or unreasonably dangerous condition which caused or contributed to the crash. In addition, the experts concluded that the sectioning of the power-steering components by plaintiffs' expert deprived defendant of the opportunity to show the jury further evidence of the proper manufacture and operation of the mechanism.

On September 11, 1992, the eve of trial, plaintiffs filed a motion *in limine*, seeking to bar defendant from cross-examining plaintiffs' experts regarding their methods of testing the power-steering components. Defendant responded with its motion to dismiss the case or, in the alternative, bar any evidence of the condition of the power-steering mechanism. Defendant argued that it was entitled to such relief pursuant to Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)), as a sanction

for the destruction of the power-steering components without notice by plaintiffs' expert witness. Following a hearing held that same day, the circuit court denied plaintiffs' motion *in limine* and granted defendant's motion to dismiss plaintiffs' complaint with prejudice.

Plaintiffs filed a motion for reconsideration on October 9, 1992, arguing that defendant had not shown that it suffered prejudice to a degree which mandated dismissal of the complaint. Plaintiffs included the affidavit of Larry Bihlmeyer, an additional mechanical engineer retained by plaintiffs' counsel. In the affidavit, Bihlmeyer opined that the tests which defendant contended it was precluded from performing would not have yielded data relevant to the alleged defects of the power-steering mechanism. In addition, Bihlmeyer stated that the destructive testing of the power-steering components had not hindered his ability to form his opinions. The trial court denied plaintiffs' motion for reconsideration and plaintiffs appealed.

The appellate court determined that the circuit court did not err in imposing a sanction on plaintiffs for the destructive testing of the power-steering components. However, the appellate court did determine that the circuit court abused its discretion by dismissing plaintiffs' case without first considering the degree of prejudice suffered by defendant. Accordingly, the appellate court reversed the trial court's dismissal order and remanded the cause for a hearing to determine whether the degree of prejudice suffered by defendant warranted dismissal of plaintiffs' cause of action. 271 Ill. App. 3d at 11. Defendant appealed.

Before this court, defendant contends that the appellate court erred in reversing the circuit court's dismissal of the cause of action as a sanction for plaintiffs' discovery violations. It argues that a defendant in a products liability action is entitled to dismissal when-

ever a plaintiff has spoliated the allegedly defective product and such spoliation gives the plaintiff an unfair advantage in the litigation. Defendant further contends that the appellate court erred in remanding the cause for a hearing to determine the level of prejudice it suffered from the destructive testing. Defendant argues that when a defendant is precluded from testing an allegedly defective product in its post-accident condition, the prejudice suffered by the defendant is manifest.

In response, plaintiffs contend that the circuit court lacked authority to impose any sanction upon them because Rule 219(c) provides sanctions only for violations of discovery rules and pretrial orders. Plaintiffs argue that, because their expert's testing of the power-steering components did not violate any discovery rule or court order, the circuit court was without authority to sanction them for the destructive testing. Plaintiffs argue in the alternative that, if the circuit court is empowered to impose any sanction under these circumstances, they are entitled to a full evidentiary hearing to determine in what manner and to what extent the destructive testing prejudiced defendant. Finally, plaintiffs contend that if any sanction is appropriate it should be a sanction far short of dismissal of their cause of action.

## ANALYSIS

We first address the issue of whether the trial court possessed authority under Supreme Court Rule 219(c) to impose a sanction upon plaintiffs for destructive testing of evidence prior to commencement of the lawsuit. The trial court's order in the instant case states that plaintiffs' cause of action was dismissed with prejudice as a sanction based on plaintiffs' expert's destruction of the power-steering components. The appellate court, relying primarily on *Graves v. Daley*, 172 Ill. App. 3d 35 (1988), and *American Family Insurance Co. v. Village*

*Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624 (1992), determined that the destructive testing of the power-steering components was clearly an act for which plaintiffs could be sanctioned. 271 Ill. App. 3d at 9. This court has defined "destructive testing" as the physical testing of tangible objects such that the testing involves the alteration or partial destruction of the object. *Sarver v. Barrett Ace Hardware, Inc.*, 63 Ill. 2d 454, 458-59 (1976). Plaintiffs do not disagree that the tests performed in the instant case either altered the condition of or partially destroyed the power-steering components.

Rule 219(c) authorizes a trial court to impose a sanction, including dismissal of the cause of action, upon any party who unreasonably refuses to comply with any provisions of this court's discovery rules or any order entered pursuant to these rules. 166 Ill. 2d R. 219(c); *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 62 (1995). The decision to impose a particular sanction under Rule 219(c) is within the discretion of the trial court and, thus, only a clear abuse of discretion justifies reversal. *Boatmen's National Bank v. Martin*, 155 Ill. 2d 305, 314 (1993). Initially, we observe that the testing of the power-steering components was performed by plaintiffs' experts approximately eight months prior to the date plaintiffs filed their complaint. Therefore, the trial court had not entered any order prohibiting such testing.[1] Nevertheless, some Illinois courts have held that it is unreasonable noncompliance, and thus sanctionable, for a party to fail to produce relevant evidence because it

---

[1]We observe that the record contains a stipulated protective order, filed April 12, 1990, which requires preservation of all the automobile parts and components in their then-present condition and prohibits any destructive testing without the other party's consent. Nevertheless, the trial court did not rely on the protective order as a basis for its discovery sanction and because the destructive testing at issue occurred prior to the entry of the order we conclude it was not violated.

was destroyed prior to the filing of a lawsuit and, thus, before any protective order can be entered by the court. See *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.*, 262 Ill. App. 3d 636, 640-42 (1994); *American Family Insurance Co.*, 223 Ill. App. 3d at 626-28; *Graves*, 172 Ill. App. 3d at 37-39.

In *Graves*, the plaintiffs' home was destroyed by a fire that was caused, in the opinion of the insurance investigator, by a defect in the plaintiffs' furnace. Prior to filing a strict liability action against the furnace manufacturer, plaintiffs disposed of all the debris from the home, including the furnace. During discovery, the trial court granted defendant's motion for sanctions, barring all evidence regarding the condition of the furnace. In affirming the sanction, the appellate court observed that the preservation of the allegedly defective product is of utmost importance in a strict liability action. The court reasoned that the plaintiffs knew, or should have known, the evidentiary value of the allegedly defective product and determined that plaintiffs were "not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence." *Graves*, 172 Ill. App. 3d at 38-39; see also *American Family Insurance Co.*, 223 Ill. App. 3d at 627-28 ("As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it").

Thus, the appellate court has determined that a potential litigant owes a duty to take reasonable measures to preserve the integrity of relevant and material evidence. This duty is based on the court's concern that, were it unable to sanction a party for the presuit destruction of evidence, a potential litigant could circumvent discovery rules or escape liability simply by destroying the proof prior to the filing of a complaint.

See *Graves*, 172 Ill. App. 3d at 38-39; *American Family Insurance Co.*, 223 Ill. App. 3d at 627-28; *Miller v. Gupta*, 275 Ill. App. 3d 539, 545 (1995), *aff'd in part & rev'd in part on other grounds*, 174 Ill. 2d 120 (1996). We agree with the appellate court that a potential litigant does indeed owe such a duty.

Although this court has previously recognized the value of destructive testing as a discovery tool, it has also held that such testing must be authorized in the sound discretion of the trial court and be permitted only when "the rights of the opposing litigant are not unduly prejudiced." *Sarver*, 63 Ill. 2d at 459-60. In *Sarver*, this court stated:

> "[T]he trial court must be sure that the testing is relevant to the issues in the case and that the information sought is unavailable through any other, less destructive, testing method. Also the trial court must insure that the alteration or partial destruction of the item will not unreasonably impair the opposing litigant's presentation of his case to the trier of fact." *Sarver*, 63 Ill. 2d at 461.

In the trial court, defendant contended that the destructive testing of the power-steering components placed it at a disadvantage because defendant was precluded from performing certain tests which would aid in its defense. The rules provide that both parties are entitled to full disclosure by discovery of any relevant matter, including matters which relate to the defense of a party. 166 Ill. 2d R. 201(b)(1); *Yuretich v. Sole*, 259 Ill. App. 3d 311, 317 (1994). Moreover, either party may seek production of evidence for testing whenever the condition of such item is relevant. 166 Ill. 2d R. 214. Thus, defendant had a right to perform tests on the power-steering components in order to formulate its defense to the products liability action. However, plaintiffs' destructive testing interfered with defendant's right to such discovery. Under the specific circumstances of this case, we cannot say that the trial court abused

its discretion in determining that plaintiffs' actions were an unreasonable noncompliance with discovery rules.

Having determined that the trial court had authority to impose a sanction on plaintiffs for the destructive testing of evidence, we must next address the issue of whether dismissal was the appropriate sanction. A just order of sanctions under Rule 219(c) is one which, to the degree possible, insures both discovery and a trial on the merits. *Wakefield v. Sears, Roebuck & Co.*, 228 Ill. App. 3d 220, 226 (1992); *White v. Henrotin Hospital Corp.*, 78 Ill. App. 3d 1025, 1028 (1979). When imposing sanctions, the court's purpose is to coerce compliance with discovery rules and orders, not to punish the dilatory party. *Sander*, 166 Ill. 2d at 68; *People ex rel. General Motors Corp. v. Bua*, 37 Ill. 2d 180, 196 (1967), quoting *Caryl Richards, Inc. v. Superior Court*, 188 Cal. App. 2d 300, 304, 10 Cal. Rptr. 377, 380 (1961). An order of dismissal with prejudice or a sanction which results in a default judgment is a drastic sanction to be invoked only in those cases where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority. *Sander*, 166 Ill. 2d at 67-68; *Wakefield*, 228 Ill. App. 3d at 226; *White*, 78 Ill. App. 3d at 1028. Being such a drastic sanction, dismissal should only be employed as a last resort and after all the court's other enforcement powers have failed to advance the litigation. *Wakefield*, 228 Ill. App. 3d at 226; *White*, 78 Ill. App. 3d at 1028.

The reversal of a trial court's imposition of a particular sanction is only justified when the record establishes a clear abuse of discretion. *Sander*, 166 Ill. 2d at 67; *Boatmen's National Bank*, 155 Ill. 2d at 314. To determine if the trial court abused its discretion, a reviewing court must look to the criteria upon which the trial court relied in making its determination of an appropriate sanction. *Boatmen's National Bank*, 155 Ill. 2d

at 314; *Ashford v. Ziemann*, 99 Ill. 2d 353, 369 (1984). The factors a trial court is to use in determining what sanction, if any, to apply are: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence. *Boatmen's National Bank*, 155 Ill. 2d at 314; *Ashford*, 99 Ill. 2d at 369; *Vaughn v. Northwestern Memorial Hospital*, 210 Ill. App. 3d 253, 259-60 (1991). Of these factors, no single factor is determinative. *In re Estate of Kline*, 245 Ill. App. 3d 413, 433 (1993).

Applying these factors to the instant case, we find the majority of factors weigh in favor of plaintiffs. Initially, we note that defendant cannot claim surprise that plaintiffs performed destructive testing on the power-steering components. Defendant claims that it was not clear that destructive testing of the evidence had occurred until January 1992, after defendant had deposed plaintiffs' expert witnesses. The court notes defendant's motion to compel production of the automobile parts, filed on December 23, 1991, expressly states that plaintiffs had engaged in destructive testing. In addition, the record does not support defendant's claim that it was unaware of the degree of destructive testing performed. In March 1987, defendant was informed of the metallurgical testing of the power-steering components and defendant received a copy of Jacobs' report documenting the testing early in the case. It is expressly reported in this document, and a number of photographs clearly show, that the power-steering components were sectioned during Jacobs' examination. Moreover, defendant's own experts inspected the automobile and all its components in September 1989, taking notes and over

100 photographs. Thus, defendant was aware of the testing and condition of the power-steering mechanism.

Defendant's claims of surprise serve to highlight its own lack of diligence in seeking discovery of the automotive parts. Defendant attempts to explain this by blaming plaintiffs for delays in scheduling depositions of plaintiffs' experts. Nevertheless, it was not necessary for defendant to wait until the depositions of the expert witnesses to receive the tangible evidence. At any time after defendant filed its appearance (166 Ill. 2d R. 201(d)), it could have obtained production of the items with a proper written discovery request pursuant to Rule 214 (166 Ill. 2d R. 214). However, defendant never entered a Rule 214 request for the steering components and its motion to compel production of the parts was not filed until December 1991, nearly 5½ years after commencement of the suit.

Moreover, defendant's objection to the destructive testing was not timely. Defendant did not file its motion to dismiss, as a Rule 219(c) sanction, until the eve of trial in September 1992, more than six years after the suit was filed. However, defendant was aware of the destructive testing as early as March 1987, when it learned of Jacobs' testing or, at the latest, in September 1989, when its own experts examined the automobile and components.

We also conclude that plaintiffs fairly demonstrated that they acted in good faith. While acknowledging that the testing altered the condition of the power-steering components, plaintiffs claim that it was necessary to determine whether they possessed a valid products liability claim against defendant. Plaintiffs' expert testified in his deposition that his initial examination of the automobile revealed no defect which would result in a loss of power-steering control and a subsequent internal examination of the power-steering mechanism revealed

a condition which was not definitively a defect. After the initial investigation revealed no facts to support a claim against the car manufacturer, it was necessary for plaintiffs to conduct further investigation to more fully determine if they had a viable cause of action. See *Regan v. Ivanelli*, 246 Ill. App. 3d 798, 809 (1993). Failure to conduct further investigation at that point may have exposed plaintiffs to sanctions under Rule 137 (155 Ill. 2d R. 137) for filing a frivolous complaint (see *In re Estate of Hoover*, 155 Ill. 2d 402, 418-19 (1993); *Regan*, 246 Ill. App. 3d at 809). In addition, after the testing was performed, plaintiffs preserved all of the parts and components of the automobile and power-steering mechanism. Once defendant sought production of the automobile components, plaintiffs produced them in a timely manner. The trial court specifically found that plaintiffs had not acted in bad faith and, after a thorough review of the record, we come to the same conclusion.

Despite these factors, defendant claims that it was prejudiced by the destructive testing because it could not perform certain tests to affirmatively disprove plaintiffs' theories regarding the defective condition of the power-steering mechanism. We agree that the nature of the power-steering mechanism in this case was such that it had significant evidentiary value. We also recognize that a defendant can clearly be prejudiced in defending a strict liability action if the allegedly defective product is not preserved. See *H&H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App. 3d 235, 247 (1994); *Graves*, 172 Ill. App. 3d at 38-39. However, here the degree of prejudice to the defendant is in question.

A thorough review of the proceedings reveals that the trial court did not rely on any determination that defendant was unduly prejudiced in order to justify the sanction of dismissing plaintiffs' cause of action. To the

contrary, the trial court determined that it was unnecessary to consider evidence pertaining to the prejudice suffered by defendant as a result of the destructive testing, believing that the *Graves* holding mandated dismissal of a plaintiffs' cause of action as a sanction for the presuit alteration of evidence.

Contrary to defendant's contention, a party is not automatically entitled to a specific sanction just because evidence is destroyed or altered. Rather, a court must consider the unique factual situation that each case presents and then apply the appropriate criteria to these facts in order to determine what particular sanction, if any, should be imposed. *Boatmen's National Bank*, 155 Ill. 2d at 314; *Ashford*, 99 Ill. 2d at 372. Dismissing plaintiffs' cause of action solely because evidence was altered, without any regard to the unique factual situation or the relevant factors which should be considered in determining an appropriate sanction, is a sanction which serves only to punish the party and does nothing to further the objects of discovery (see *Sander*, 166 Ill. 2d at 68; *Bua*, 37 Ill. 2d at 196). Accordingly, we agree with the appellate court's order which remanded the instant cause to the trial court for a hearing to specifically determine the degree of prejudice defendant suffered as a result of the plaintiffs' alteration of evidence.

Once the trial court ascertains the level of defendant's prejudice, it must then determine what sanction, if any, is warranted. Defendant contends that the prejudice it suffered was so great that it can only be remedied by dismissal of plaintiffs' case. We recognize that prejudice is one of the factors to be considered when determining an appropriate discovery sanction. *Boatmen's National Bank*, 155 Ill. 2d at 314. Nevertheless, we disagree that defendant suffered such a degree of prejudice from the destructive testing that dismissal of plaintiffs' case is warranted.

Unlike many of the cases on which defendant relies, plaintiffs in this case did not destroy or dispose of the entire allegedly defective product. See, *e.g.*, *Graves*, 172 Ill. App. 3d at 37 (entire defective furnace destroyed); *American Family Insurance Co.*, 223 Ill. App. 3d at 625-26 (only one wire of entire automobile preserved). All the components of the power-steering mechanism and the remainder of the automobile are still available for the defendant's investigation. See *H&H Sand & Gravel Haulers Co.*, 260 Ill. App. 3d at 245-47. Although certain additional tests of the power-steering mechanism, which defendant claims are now impossible to perform, may have provided defendant with further evidence to support its defense, the power-steering components still exist in such a condition that defendant's experts were able to form their opinions that the mechanism contained no defect.

Moreover, defendant has access to all the same information, reports, and photographs upon which plaintiffs' experts relied in forming their opinions concerning the alleged defect. In addition, defendant possesses all the information and data regarding the original design and production of the power-steering mechanism. Finally, we observe that defendant's claims of prejudice are weakened by its lack of diligence in seeking production and the untimeliness of its objection to the condition of the evidence. When sufficient evidence is available to both parties which enables them to establish their case or defense, a sanction which disposes of a claim without a trial on the merits constitutes an abuse of discretion. *H&H Sand & Gravel Haulers Co.*, 260 Ill. App. 3d at 248.

Here, plaintiffs' testing only altered or partially destroyed the automobile components and was done in a good-faith effort to better determine the legitimacy of their legal claims. Moreover, plaintiffs' actions were not

a knowing and willful defiance of the discovery rules or the trial court's authority. We believe a greater degree of prejudice and a stronger showing of wrongdoing is necessary than that presented by the facts of this case in order to impose such a drastic sanction. Therefore, we conclude that dismissal of plaintiffs' case is an unreasonable sanction. A reasonable sanction would be one other than dismissal or one which does not totally prevent plaintiffs from presenting evidence regarding the condition of the power-steering mechanism.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court, remanding the cause to the circuit court of Cook County for further proceedings, is affirmed. On remand, however, the circuit court shall enter a sanction other than dismissal; to the extent that the appellate court did not so order, its judgment is therefore modified.

*Appellate court judgment affirmed as modified.*

JUSTICE HEIPLE, dissenting:

Plaintiffs sustained injuries on July 7, 1985, when their automobile allegedly malfunctioned. Believing the steering mechanism responsible, but not wanting to file a frivolous suit in violation of Rule 137 (155 Ill. 2d R. 137), they engaged a metallurgical engineer to examine the steering mechanism. On September 20, 1985, plaintiffs' metallurgical engineer sliced the column into sections and conducted detailed tests which purportedly disclosed that the steering column contained a flaw which caused it to malfunction. On June 16, 1986, plaintiffs filed the instant product liability action against General Motors Corporation. On the eve of trial, General Motors moved to dismiss plaintiffs' case as a Rule 219(c) sanction for the presuit destructive testing of the power-steering mechanism without notice to defendant's

expert witnesses. The trial court dismissed plaintiffs' case as a discovery sanction and the appellate court affirmed in part, ruling that while a sanction was permissible under Rule 219(c), the trial court should first conduct a hearing to determine the level of prejudice before entering whatever sanction it then deems appropriate. The majority today affirms, concluding, *inter alia*, that Rule 219(c) permits sanctions for presuit destructive testing of evidence. Because our discovery rules do not prescribe presuit behavior, and further given that the presuit rule crafted by the majority is both unwise and unnecessary, I respectfully dissent.

The majority correctly observes that Rule 219(c) authorizes a trial court to impose a sanction, including dismissal, upon any party who unreasonably refuses to comply with any provisions of this court's discovery rules or any order entered pursuant thereto. 166 Ill. 2d R. 219(c); *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 62 (1995). The majority errs, however, in concluding that Rule 219(c) applies to the plaintiffs' presuit destructive testing. First, there are no discovery rules governing presuit activities. Second, because plaintiffs had yet to file suit when they conducted the destructive testing, there was no court order concerning the same. Accordingly, Rule 219(c) and our other discovery rules, on their face, are inapplicable in the instant context.

In deciding to fashion a discovery rule not found in the existing discovery scheme, the majority approves a line of nonbinding appellate precedent consisting of *Graves v. Daley*, 172 Ill. App. 3d 35 (1988), and *American Family Insurance Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624 (1992). But see *Graves*, 172 Ill. App. 3d at 39-40 (Heiple, J., dissenting). The rationale of my dissent in *Graves* is equally applicable here. As I said in that case:

"The majority decision in this case is without support in case law, in statute or in court rule. That is to say, it

enunciates a wholly new proposition of law. The proposition is that a party may be barred from introducing testimony or other evidence on any matter relating to physical evidence if the physical evidence has been disposed of and cannot be produced.

In the case at hand, the plaintiff has been barred from presenting evidence regarding a defective furnace because the furnace was disposed of and could not be produced for the defendant's inspection. The justification for the ruling is that the destruction of the furnace was done corruptly by the plaintiff in order to secure an unfair advantage in a lawsuit that was being contemplated but not yet filed.

While I question the finding that the destruction was corrupt, that particular point is not material. In fact, the State Fire Marshall had fully investigated the fire, the insurance company had done likewise, and the homeowners wanted to get the fire debris disposed of. Even accepting the bad light put on plaintiffs' actions, however, it should not make any difference. The point is that at the time of destruction of the furnace, there was no lawsuit on file and no directive from any court prohibiting the plaintiffs from hauling their fire debris to the junkyard. Later, when the plaintiffs were directed to produce the furnace, the order could not be complied with because it was impossible for them to do so.

Interestingly, in the case at hand, the furnace itself was not the only material evidence relating to the cause of the fire. It is equally arguable that all of the fire scene was material. The burned house and its contents could or might show that the fire began in a different area than the furnace, say from a hot electrical wire or from a combustible agent, etc.

The precedential implications of this ruling are truly enormous. Future plaintiffs may likewise find themselves tossed out of court because they tossed out their junk. It could be a wrecked car, a severed body part, an item of clothing, a bandage, a dead cat. Who knows? Doubtless, resourceful defendants will find good reasons for claiming that plaintiffs corruptly destroyed this or that item of physical evidence knowing full well that a lawsuit was being contemplated and that the evidence would be material.

Finally, regarding the furnace in this case, it seems to me that the defendants, who were the manufacturers and installers of the furnace in question, would have been well able to meet the plaintiffs' case with the testimony of their own designers, engineers and installers. The destruction of the ruined furnace by the plaintiffs really only goes to the weight of plaintiff's evidence and could be considered by the jury in light of all the evidence in the case.

The action taken by the trial court in this case and affirmed by a majority of this appellate court has deprived plaintiffs of their day in court and has created an unfortunate precedent in so doing.

Accordingly, I dissent." *Graves*, 172 Ill. App. 3d at 39-40 (Heiple, J., dissenting).

The majority here adopts the holdings of these appellate cases, which essentially provide that sound public policy should preclude plaintiffs from discarding or destroying evidence which might be material to future litigation: plaintiffs or their experts should not be permitted to intentionally or negligently destroy material evidence before filing suit and then substitute their own description of it at trial. The majority believes that, to hold otherwise, would permit the circumvention of our discovery rules by sanctioning presuit behavior directly contrary to our discovery rules. I disagree.

Finally, I would observe that plaintiffs' presuit destructive testing occurred several years prior to *Graves v. Daley*, 172 Ill. App. 3d 35 (1988), the first opinion to hold that such presuit activities could subject a litigant to Rule 219(c) sanctions. A retrospective or retroactive rule is one which creates a new obligation and then imposes that obligation on transactions already past, resulting in a different legal effect from that which existed under the law when the transaction occurred. Black's Law Dictionary 1317 (6th ed. 1990). Such rules, though generally constitutional in civil contexts, are nevertheless unfair and should be discouraged. The majority opinion authorizes Rule 219(c) sanctions for

presuit conduct that violated none of our discovery rules as understood before *Graves* and its progeny. Because *Graves* was decided after the instant presuit destructive testing, the majority adopts a retrospective interpretation of Supreme Court Rule 219(c)—unfairly punishing plaintiffs for not having the foresight to anticipate this new rule.

Accordingly, I dissent.

JUSTICE HARRISON joins in this dissent.