NOTICE
Decision filed 10/17/14, corrected 10/20/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130582

NO. 5-13-0582

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and | ) | St. Clair County. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06-MR-229 |
| | ) | |
| DAVID MILLER, | ) | |
| | ) | |
| Defendant-Appellant and | ) | |
| Cross-Appellee | ) | Honorable |
| | ) | Brian Babka, |
| (Patricia Lynch, Defendant). | ) | Judge, presiding. |

_____

JUSTICE SPOMER delivered the judgment of the court, with opinion.
Justices Stewart and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant David Miller appeals the orders of the circuit court of St. Clair County that awarded Miller sanctions. The plaintiff, American Service Insurance, cross-appeals. For the following reasons, we affirm.

¶ 2                                   FACTS

¶ 3    The facts necessary to our disposition of this appeal are as follows. On August 15, 2006, the plaintiff filed a complaint for declaratory judgment against defendants Patricia Lynch and David Miller. Therein, the plaintiff alleged that Lynch was a former insured

1

of the plaintiff, and that she was a named defendant in a lawsuit filed by Miller arising from damages Miller allegedly sustained when Lynch, then insured by the plaintiff, struck the bicycle he was riding with her automobile on February 12, 2003. The plaintiff further alleged that, in contravention of the requirements of the notice and cooperation clauses of her automobile insurance policy with the plaintiff, Lynch did not provide the plaintiff with notice of the accident in which she struck Miller and did not provide the plaintiff with notice of the lawsuit filed by Miller against her. The plaintiff asked the circuit court to, *inter alia*, find and declare that the plaintiff therefore had no obligation to defend or indemnify Lynch in the action brought by Miller. Paragraph 4 of the complaint stated that "[a] copy of the policy is attached hereto and incorporated herein as Exhibit A." Attached to the plaintiff's complaint was, *inter alia*, Exhibit A. The first page of Exhibit A included the signed certification of Veronica Maldonado, an underwriter for the plaintiff, that Exhibit A was "a true and correct copy" of the insurance policy issued by the plaintiff to Lynch and in effect at the time of Lynch's collision with Miller. Discovery and motion traffic not relevant to this appeal followed for the next several years.

¶ 4    The case finally came to trial on March 19, 2013. On that date, during the direct examination of witness Scott St. John, a claims adjuster employed by the plaintiff, counsel for the plaintiff adduced testimony from St. John that on May 19, 2004, St. John requested a "certified copy" of Lynch's policy from the plaintiff's underwriting department, and that on May 24, 2004, St. John sent the policy he received from underwriting to counsel for Miller. St. John testified about discrepancies between the

2

policy he initially sent to counsel for Miller and the policy attached to the complaint as Exhibit A, and to explain these discrepancies, described the standard process by which the plaintiff created certified copies of policies, which, according to St. John, was to take "the declarations page that was initially issued and [send] that along with the body of the policy that was current at the time of the request" for a certified copy. Counsel for the plaintiff then attempted to introduce into evidence, as Plaintiff's Exhibit 14, a copy of Exhibit A, which St. John described as "a certified copy of Patricia Lynch's policy." Counsel for Miller objected, stating "this is not the policy that was in effect at the time of this incident," because, as St. John's testimony about the plaintiff's standard process demonstrated, the only document that "existed" at the time of the incident was the declarations page: the policy itself was "a copy of a policy that was in effect at the time we requested a certified copy, rather than the policy that was in effect at the time of this incident." Counsel pointed out that the purported certified copy could not have been in existence at the time of the incident, because it contained an address in Elk Grove Village not occupied by the plaintiff until several months after the incident, which also could not have been the address to which Lynch was required to give notice of any accidents during the pendency of the policy.

¶ 5    The court noted that the policy that had been produced "require[d] cooperation and notification by an insured *** by telephone" to a telephone number that did not exist at the time of the incident, located at an office that did not exist at the time of the incident. Counsel for the plaintiff responded that Miller had admitted, via a request to admit, "that this was the policy in effect at that time." Miller objected, positing that the

3

request to admit sent to Miller by the plaintiff must have been fraudulent as well. Although counsel for the plaintiff opined that the process used by the plaintiff to certify the policy "is the practice by which certified copies are generated in the insurance industry," no expert testimony was offered as to this alleged standard practice, and the court declined, in the absence of additional foundation, to consider St. John's testimony as such expert testimony. The court also noted that it had "an issue with sending someone what purports to be a certified copy and not clearly telling them this is a representative policy, it's not the policy in question." When counsel for the plaintiff eventually stated that the only difference "between this policy and the prior policy is the address information," the court responded: "How would we know that? We'd have to take your word for it. We'd have to take the witness's word without his ability to say how he knows that unless he memorized verbatim the prior policy."

¶ 6     Subsequently, counsel for Miller moved to have the plaintiff's pleadings "stricken for discovery fraud and for abuse of this entire process," and requested "leave to submit a request for sanctions at the end of this hearing." The court took the motions under advisement, and eventually the questioning of St. John resumed. On cross-examination, St. John conceded that the copy of the policy that was attached to the complaint for declaratory judgment was "not the policy that Ms. Lynch had in her possession at the time of [the] accident." At the conclusion of the hearing, counsel for Miller moved for a directed verdict, pointing out that because the plaintiff had been unable to produce the policy in question, the plaintiff could not establish what the terms of that policy were and therefore could never prove that Lynch had failed to comply with the purported notice

4

and cooperation provisions. In response, the court noted that the evidence at the hearing demonstrated that correspondence sent by the plaintiff to Lynch after the incident made reference to paragraphs, purportedly relating to the notice and cooperation provisions of the policy, that did not match up with the policy subsequently produced by the plaintiff for trial. The court took the matter under advisement and noted that by agreement of the parties, the question of possible sanctions would be raised by written motion.

¶ 7 On April 5, 2013, counsel for Miller filed her motion for sanctions pursuant to Illinois Supreme Court Rules 137 (eff. Jan. 4, 2013) and 219(c) (eff. July 1, 2002). On April 22, 2013, the plaintiff filed a response to the motion for sanctions, as well as a motion for leave to amend the complaint and substitute an exhibit, and a proposed first amended complaint for declaratory judgment, attached to which was Exhibit A1. The first page of Exhibit A1 included the signed certification of Helen Piton, an underwriter for the plaintiff, dated April 2, 2013, that Exhibit A1 was "a true and correct copy" of the insurance policy issued by the plaintiff to Lynch and in effect at the time of Lynch's collision with Miller.

¶ 8 On May 8, 2013, a hearing was held on the motions. Following the hearing, counsel for Miller was granted leave to file a supplemental motion for sanctions, and the plaintiff was granted leave to respond thereto. Counsel for Miller filed her supplemental motion on May 22, 2013. On June 12, 2013, the plaintiff filed a corrected motion for leave to amend the complaint and substitute an exhibit, a response to Miller's supplemental motion for sanctions, the affidavit of the plaintiff's litigation manager, Robert McKenna, and a document styled as "Exhibit A2." The first page of Exhibit A2

included the signed certification of underwriter Piton, dated June 11, 2013, that Exhibit A2 was "a true and correct copy" of the insurance policy issued by the plaintiff to Lynch and in effect at the time of Lynch's collision with Miller. In his affidavit, McKenna purported to explain why the plaintiff had encountered so many difficulties when attempting to produce a certified copy of Lynch's insurance policy, and averred that: (1) the relevant policy provisions in all the policies produced by the plaintiff were the same; (2) Exhibit A2 was the correct policy; and (3) "the errors associated with the creation of the certified copies of the subject policy were wholly inadvertent and were not intentional, fraudulent, deceptive or done with an intention to deceive or conceal." On June 20, 2013, Miller filed a response to the plaintiff's documents.

¶ 9    On July 29, 2013, the circuit court entered its order on the appropriateness of sanctions. The first section of the order, which was styled "Sanctions per Supreme Court Rule 137," found that despite multiple attempts to do so, the plaintiff still had not produced "the right policy," because even Exhibit A2 did not "comport" with correspondence the plaintiff had sent to Lynch regarding the policy issued to her, and therefore could not be a true and correct copy of her policy. The order found Rule 137 sanctions to be appropriate against the plaintiff, but not against the plaintiff's counsel. The second section of the order, which was styled "Sanctions per Supreme Court Rule 219(c)," found that the plaintiff had abused the rules of discovery when the plaintiff sent Miller a request to admit the genuineness of "a false copy of the insurance policy in question." As a sanction for the discovery abuse, the order struck the plaintiff's complaint for declaratory judgment and ruled that because the attempts to amend the

6

complaint still did not include the correct policy, those documents would be stricken, or leave to file them would be denied. The order noted that the cavalier attitude demonstrated by the plaintiff "in submitting sworn documentation that it later admits is incorrect is shocking at worst, and severely lacking in due diligence at best." The order found that sanctions pursuant to both Rule 137 and Rule 219(c) were appropriate against the plaintiff, but not against the plaintiff's counsel.

¶ 10    Following additional motion traffic not relevant to this appeal, a hearing was held on November 5, 2013, to determine the appropriate amount of sanctions. At the hearing, exhibits were presented and entered into evidence, and argument was heard. Following the hearing, the circuit court took the matter under advisement. On December 5, 2013, the court entered both a handwritten order and a typed one. Read together, the orders reference only Rule 137, not Rule 219(c), and award sanctions to Miller in the amount of: (1) "$20,000 plus interest at a statutory rate of 9% per annum," beginning on August 28, 2008, "which is interest accrued to date of $9,339.44 and continuing to accrue at a rate of $4.93 per day until paid"; (2) attorney fees in the amount of $60,040.50; and (3) litigation expenses in the amount of $3,948.53. The typed order further states, "There is no evidence of intentional concealment or willful misconduct on the part of [the plaintiff] which would warrant the award of monetary sanctions beyond those set forth above." Miller filed a timely notice of appeal, and the plaintiff filed a timely notice of cross-appeal.

¶ 11                                    ANALYSIS

¶ 12    On appeal, Miller contends the trial court erred because: (1) the court's denial of

Miller's request for a monetary fine against the plaintiff was "contrary to the manifest weight of the evidence and therefore an abuse of discretion"; (2) the court's denial of Miller's request for sanctions against the plaintiff's attorney "was contrary to the manifest weight of the evidence"; (3) the court's finding that the plaintiff's policy with Lynch had a limit of $20,000 was against the manifest weight of the evidence; and (4) the court erred in its calculation of the interest due pursuant to its sanctions. On cross-appeal, the plaintiff contends no sanctions should have been awarded.

¶ 13    We begin with an examination of the law relevant to sanctions awarded under Illinois Supreme Court Rule 137. Rule 137 requires that "[e]very pleading, motion and other document of a party" be well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. Ill. S. Ct. R. 137(a) (eff. July 1, 2013). "Rule 137 contains an implicit requirement that an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded," and this court has held that "[a] violation of this continuing duty of inquiry is sanctionable." *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 267 (2001). When a pleading or other document is filed in violation of Rule 137, the court may impose an appropriate sanction, which may include an order to pay the reasonable expenses incurred by the other party as a result of the filing of the pleading or other document, including reasonable attorney fees. Ill. S. Ct. R. 137(a) (eff. July 1, 2013). "Good faith alone is not a defense to sanctionable conduct." *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 267 (2001). Subsection (d) of Rule 137 requires the trial judge to "set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a

8

separate written order."  Ill. S. Ct. R. 137(d) (eff. July 1, 2013).  We review a circuit court's award of Rule 137 sanctions under the abuse of discretion standard.  *In re Rocca*, 2013 IL App (2d) 121147, ¶ 30.  A trial court exceeds its discretion on sanctions only where no reasonable person would take the view adopted by it.  *Mandziara v. Canulli*, 299 Ill. App. 3d 593, 602 (1998).

¶ 14    In the case at bar, as described in detail above, the trial court found that sanctions against the plaintiff pursuant to Rule 137 were warranted because despite multiple attempts to do so, the plaintiff still had not produced and filed with the court "the right policy," because even Exhibit A2 did not "comport" with correspondence the plaintiff had sent to Lynch regarding the policy issued to her, and therefore could not be a true and correct copy of her policy, as had been attested by the plaintiff when the policy was filed with the plaintiff's complaint.  The court found Rule 137 sanctions to be appropriate against the plaintiff, but not against the plaintiff's counsel.  In subsequent orders, the court awarded sanctions to Miller in the amount of: (1) "$20,000 plus interest at a statutory rate of 9% per annum," beginning on August 28, 2008, "which is interest accrued to date of $9,339.44 and continuing to accrue at a rate of $4.93 per day until paid"; (2) attorney fees in the amount of $60,040.50; and (3) litigation expenses in the amount of $3,948.53.  The court ruled that "[t]here is no evidence of intentional concealment or willful misconduct on the part of [the plaintiff] which would warrant the award of monetary sanctions beyond those set forth above."

¶ 15    On appeal, Miller contends that the sanctions awarded pursuant to Rule 137 did not accomplish "the stated purpose of Rule 137," which Miller notes is to "prevent the

abuse of the judicial process by penalizing those who bring vexatious or harassing actions without sufficient foundation." Miller posits that in light of the evidence presented by Miller about the net worth of the plaintiff, the court should have awarded the $2.6 million in sanctions Miller requested, because to fail to do so was to ensure that the plaintiff was not "punished" for its bungled handling of the production of Lynch's insurance policy. Accordingly, Miller asks this court to reverse the trial court and remand so that "a monetary penalty" against the plaintiff is imposed "that reflects the severity of its misconduct and will deter such misconduct in the future." Miller's second contention regarding the Rule 137 sanctions is that because the plaintiff's counsel repeatedly failed to produce a correct copy of Lynch's policy, instead continuing to sign and file pleadings that he knew were accompanied by documents that were not correct copies of the policy, the trial court erred by limiting the Rule 137 sanctions only to the plaintiff, rather than to counsel as well. In response, the plaintiff notes, *inter alia*, that no published opinion of a court of review in Illinois has upheld an award of sanctions such as that proposed by Miller, and that no evidence was before the trial court that would have justified sanctions against the plaintiff's counsel, because no evidence was ever presented that counsel for the plaintiff was aware of the problems with the insurance policies. On cross-appeal, the plaintiff contends no sanctions should have been awarded under Rule 137 at all, because "Miller was not prejudiced" by the actions of the plaintiff, and because the evidence presented to the trial court "established only that a mistake was made, not an intentional, willful or harassing act that would warrant sanctions."

¶ 16    After carefully considering the evidence before the court, described in great detail

10

above, and the case law regarding sanctions pursuant to Rule 137, also detailed above, we cannot conclude that no reasonable person would take the view adopted by the trial court, either with regard to the appropriateness of the sanctions, the entities against which sanctions were awarded, or the amount of the sanctions. Accordingly, we reject the contentions of Miller and the plaintiff with regard to the sanctions awarded pursuant to Rule 137 and affirm the trial court.

¶ 17    With regard to Miller's contention that the trial court's finding that the plaintiff's policy with Lynch had a limit of $20,000 was against the manifest weight of the evidence, we reject this contention as well. Although Miller claims that because the policy was not produced, it was "nonexistent" and thus could not have a policy limit of $20,000, we agree with the plaintiff that the fact that the plaintiff could not produce Lynch's policy does not mean the policy was "nonexistent"–only that it could not be located by the plaintiff. The evidence before the trial court was that although there were serious problems with the various "copies" of the policies produced by the plaintiff, the declarations page submitted with each policy in this case was the actual declarations page issued to Lynch, and that the page listed the policy limit at $20,000. The trial court's finding was not, by any stretch of the imagination, against the manifest weight of the evidence.

¶ 18    We next consider Miller's contention that the trial court erred in its calculation of the interest due pursuant to its Rule 137 sanctions. Specifically, Miller argues that the court should have begun its calculation on the date the underlying judgment against Lynch was entered in the trial court (June 29, 2006), rather than the date the mandate was

11

issued by this court upholding that judgment on appeal (August 28, 2008). However, as the plaintiff points out, Miller never requested, in the trial court, that interest even be awarded, let alone that the amount of interest be tied to the date of the judgment in the underlying suit against Lynch. Accordingly, we find no fault with the trial court's decision.

¶ 19    Finally, we consider the plaintiff's argument, on cross-appeal, that sanctions were not appropriate under Supreme Court Rule 219(c). As detailed above, the trial court found that the plaintiff had abused the rules of discovery when the plaintiff sent Miller a request to admit the genuineness of "a false copy of the insurance policy in question." Pursuant to Rule 219(c), as a sanction for this discovery abuse, the court struck the plaintiff's complaint for declaratory judgment and ruled that because the attempts to amend the complaint still did not include the correct policy, those documents would be stricken, or leave to file them would be denied. The court noted that the cavalier attitude demonstrated by the plaintiff "in submitting sworn documentation that it later admits is incorrect is shocking at worst, and severely lacking in due diligence at best." As was the case with the sanctions pursuant to Rule 137, the court found that sanctions pursuant to Rule 219(c) were appropriate against the plaintiff, but not against the plaintiff's counsel.

¶ 20    Our supreme court has delineated the rules to be employed when determining whether sanctions pursuant to Rule 219(c) are appropriate. The trial court must consider the following factors: "(1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse

12

party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 124 (1998). No single factor is determinative. *Id.* A sanction that results in a dismissal with prejudice or a default judgment is a drastic one "to be invoked only in those cases where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority." *Id.* at 123. We will reverse a trial court's imposition of a sanction only "when the record establishes a clear abuse of discretion." *Id.* To determine whether such an abuse of discretion has occurred, we "look to the criteria upon which the trial court relied in making its determination of an appropriate sanction." *Id.*

¶ 21 In the case at bar, the plaintiff contends that the trial court did not support the sanction imposed under Rule 219(c) "with any actual facts showing any deliberate, contumacious or unwarranted disregard of the [t]rial [c]ourt's authority," and that Miller was not prejudiced by the plaintiff's "inadvertent failure to initially provide the correct version of the policy." In support of this second argument, the plaintiff continues to contend that "[a]ll policies before the [c]ourt had the same substantive Notice and Cooperation provisions." The problem with this argument, as the plaintiff even now appears to fail to grasp, is that the plaintiff has not, to this date, produced Lynch's actual policy, and therefore it is irrelevant what provisions are contained within all of the incorrect policies produced by the plaintiff, as they prove nothing about what was included within Lynch's actual policy. Moreover, with regard to deliberate, contumacious, or unwarranted disregard of the trial court's authority, the court's order speaks for itself, specifically referencing the plaintiff's cavalier attitude, and noting that

13

the plaintiff *repeatedly* submitted "sworn documentation that it later admit[ted] is incorrect," and ruling that the plaintiff's behavior was "shocking at worst, and severely lacking in due diligence at best." The plaintiff also contends that there was before the trial court "no evidence in this case that [the plaintiff] or its counsel set out to deceive anyone or to intentionally violate discovery rules or orders." We disagree. A reasonable interpretation of the evidence presented to the trial court was that the plaintiff knew that it could not produce Lynch's policy, and therefore could not prove what notice and cooperation terms were or were not contained within that policy, and that the plaintiff hoped to trick Miller and the court into thinking there was no issue about the contents of the policy by getting Miller to acquiesce in the plaintiff's request to admit the genuineness of a false policy, the plaintiff-friendly terms of which could then be substituted for the unknown terms of Lynch's actual policy. The trial court did not err in imposing sanctions under Rule 219(c). Moreover, we agree with Miller that even if the court had erred in imposing sanctions pursuant to Rule 219(c), that error would have been harmless, as there is no way the plaintiff could now prevail on its complaint for declaratory judgment when it cannot produce Lynch's policy and therefore cannot prove what terms that policy contained.

¶ 22                              CONCLUSION

¶ 23    For the foregoing reasons, we affirm the orders of the circuit court of St. Clair County.


¶ 24    Affirmed.

14

2014 IL App (5th) 130582

NO. 5-13-0582

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| AMERICAN SERVICE INSURANCE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and | ) | St. Clair County. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06-MR-229 |
| | ) | |
| DAVID MILLER, | ) | |
| | ) | |
| Defendant-Appellant and | ) | |
| Cross-Appellee | ) | Honorable |
| | ) | Brian Babka, |
| (Patricia Lynch, Defendant). | ) | Judge, presiding. |

_____

**Opinion Filed:**     October 17, 2014

_____

**Justices:**     Honorable Stephen L. Spomer, J.

          Honorable Bruce D. Stewart, J., and
          Honorable Judy L. Cates, J.,
          Concur

_____

**Attorneys**     Rhonda D. Fiss, Michael A. Aguirre, The Law Office of Rhonda D.
**for**          Fiss, P.C., 23 Public Square, Suite 230, Belleville, IL 62220
**Appellant**

_____

**Attorneys**     William J. Knapp, Heather Mueller-Jones, Knapp, Ohl & Green,
**for**          6100 Center Grove Road, P.O. Box 446, Edwardsville, IL 62025
**Appellee**

_____