STEVE ADAMS, as Special Adm'r of the Estate of Dixie Adams, Deceased, and Indiv., Plaintiff-Appellant, v. BATH AND BODY WORKS, INC., *et al.*, Defendants-Appellees (Bath and Body Works, Inc., Counterplaintiff and Cross-Appellant; Sharon Kubasak *et al.*, Counterdefendants and Cross-Appellees; Globaltech Industries, Inc., Counterplaintiff; Bath and Body Works, Inc., *et al.*, Counterdefendants).

First District (4th Division)    No. 1—02—3530

Opinion filed May 26, 2005.

Robert N. Wadington & Associates, of Chicago (Robert N. Wadington and Jeffrey C. Kasten, of counsel), for appellant.

Johnson & Bell, of Chicago (Robert M. Burke and Jon E. Szostak, of counsel), for appellee Bath and Body Works, Inc.

Rooks Pitts, of Chicago (Michael C. Borders, James W. McConkey, and Rosa M. Tumialan, of counsel), for appellee Sharon Kubasak.

Williams, Montgomery & John, Ltd., of Chicago (Christina D. Ketcham, Alyssa M. Campbell, Brian J. Hunt, and Lloyd E. Williams, of counsel), for appellee Globaltech Industries, Inc.

O'Hagan, Smith & Amundsen, L.L.C., of Chicago (James W. Fessler and Michael Resis, of counsel), for appellee State Farm Fire and Casualty Company.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff Steve Adams, both individually and as the special administrator for the estate of his wife, Dixie Adams, filed a three-count complaint against defendants Bath & Body Works, Inc. (BBW), Globaltech Industries, Inc. (Globaltech), and Sharon Kubasak (Kubasak), seeking damages from a fire that occurred in the house that he and his family had rented from Kubasak. Plaintiff alleged that a

candle, manufactured by Globaltech and sold by BBW, was the cause of the fire. Asserted in his complaint were numerous claims for products liability, strict liability, and negligence against Globaltech and BBW. Plaintiff also asserted claims under Illinois' Smoke Detector Act (Smoke Detector Act) (425 ILCS 60/3 (West 1996)) against Kubasak based upon her failure to provide operating smoke detectors in the house. Each defendant filed cross-claims against each other seeking contribution, as well as counterclaims against plaintiff for negligently failing to preserve evidence. In addition, BBW filed a third-party complaint against Kubasak's insurer, State Farm Fire and Casualty Company (State Farm), for negligent spoliation of evidence.

The circuit court granted a motion filed by BBW and joined by Globaltech dismissing plaintiff's claims as a discovery sanction pursuant to Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)) for failing to preserve evidence. On appeal, plaintiff contends that the circuit court abused its discretion in dismissing his complaint as a discovery sanction. Plaintiff also argues that the circuit court erred in striking his experts' affidavits *sua sponte* due to a lack of foundation. For the following reasons, we reverse the judgment of the circuit court.

## BACKGROUND

On June 17, 1997, a fire swept through the house that plaintiff and his family had rented from Kubasak in Oak Forest, Illinois. According to plaintiff's deposition, before going to bed on the night before the fire, he blew out several candles in the living room area of the house. One of those candles was a "Garden Lavender Botanical Candle," which was allegedly manufactured and designed by Globaltech and sold by BBW. Plaintiff suffered severe burns as a result of the fire; his wife, however, died from burns and smoke inhalation.

Six days after the fire, plaintiff retained counsel. Though both state and city fire inspectors were unable to pin down the cause of the fire, they were able to determine that the fire began near a couch located in the living room. Based upon comments he overheard from one of these inspectors, plaintiff's counsel removed two lamps that he believed were the potential impetus of the fire. After it was determined that these lamps were not the cause, plaintiff's focus shifted to a "Garden Lavender Botanical Candle" that he said was located on an end table near the couch in the living room.

At some point shortly after the fire, however, Kubasak hired Action Fire Restoration (Action Fire) to clean up the debris and repair the damage. State Farm paid Action Fire for its services. Unbeknownst to plaintiff, many of his belongings, including the end table and couch, plus the carpet that Kubasak owned, were removed and destroyed.

Also, shortly after the fire, State Farm retained Crawford & Company (Crawford) to examine the house and determine the extent of the damage. Crawford, in turn, hired Joe Mazzone to investigate the cause of the fire. In his deposition, Mazzone stated that, after ruling out the home's wiring, appliances, and fixtures, he believed one possible cause of the fire was a candle placed on the end table. Mazzone based this belief on the fact that the area in which these items were located contained the heaviest "char or burn marks," as well as plaintiff's statement to fire inspectors that he blew out a candle on the end table before going to bed on the night of the fire. Mazzone stated that both he and Donald Hitchcock, a fire investigator with the Illinois State Fire Marshall's office, "agreed that the place where the fire started was the table." Because the end table, couch, and carpet had been destroyed, however, there was no physical evidence that would either support or refute plaintiff's statement as to the candle's location. Plaintiff was not privy to Mazzone's report until December 1997, well after the end table, couch and carpet were destroyed.

On April 26, 1999, plaintiff filed suit. Though plaintiff initially named only BBW and Globaltech as defendants, he later filed a third-amended complaint on August 3, 2000, adding claims against Kubasak pursuant to the Smoke Detector Act. On February 20, 2002, BBW filed a motion to dismiss plaintiff's complaint or, alternatively, to bar plaintiff from introducing any evidence that a candle sold by BBW was involved in the fire as a sanction under Rule 219(c) for his failure to preserve either the end table, couch, or carpet. Globaltech joined BBW's motion for sanctions.

Both State Farm and Kubasak filed motions for summary judgment (735 ILCS 5/2—1005 (West 2000)) on the third-party complaint and counterclaims filed against them by BBW and Globaltech. On August 28, 2002, though the motions were fully briefed and argued before the circuit court, the court deferred ruling because discovery was still open. On October 9, 2002, after discovery had closed, the circuit court again heard arguments; two days later the court filed a written order dismissing plaintiff's complaint.

In its order, the court found "two separate grounds on which the within claims of plaintiff must be disposed:" (1) "plaintiff and his counsel had the opportunity and the responsibility to preserve relevant evidence and failed to do so and framed their theory of the case only after allowing relevant evidence over which they had control to be destroyed (*Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188 (1995) and its progeny)" and (2) "plaintiff has offered no competent expert witness opinion testimony to present at trial with respect to cause and origin." The court found that the "[d]isposition of the claims of

plaintiff has the practical effect of mooting out the other claims among and between the parties." The court also dismissed "[a]ny claims among and between those parties that are not technically moot" because "there remains nothing to try on any of the pending claims" after "the entry of an order barring the presentation of evidence that a defective garden lavender botanical candle manufactured by [Globaltech] and sold by [BBW]" was the cause.

Plaintiff filed a timely notice of appeal. In addition, BBW filed a cross-appeal, the resolution of which is "contingent upon this court's ruling on Plaintiff's appeal." Specifically, in its cross-appeal, BBW contends that, should this court reverse the circuit court's sanction of dismissal, it should reinstate BBW's counterclaims and third-party complaint. Moreover, BBW maintains that because Kubasak failed to file a similar cross-appeal, her counterclaims against BBW, Globaltech, and Adams are forfeited.

## ANALYSIS

### I. RULE 219(c) SANCTIONS

Plaintiff contends that the circuit court erred in dismissing his claims as a sanction under Rule 219(c) due to his failure to preserve the end table, couch and carpet. Specifically, he argues that neither he nor his attorney knew that such evidence might be relevant (having pinned their hopes on the two lamps that plaintiff's attorney removed shortly after the fire) or was responsible for the destruction of that evidence. He also argues that the circuit court mistakenly dismissed his claims against Kubasak because her liability under the Smoke Detector Act was not dependent upon the cause of the fire. He contends that Kubasak could not have been prejudiced by his alleged failure to preserve evidence.

BBW, Globaltech, and Kubasak all argue that because plaintiff should have known that the end table, couch, and carpet might be relevant to determining the cause of, and, therefore, liability for, the fire, he breached his duty under *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 652 N.E.2d 267 (1995), and *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 692 N.E.2d 286 (1998), to preserve that evidence. Though they do not contend that plaintiff or his counsel played any affirmative role in the destruction of that evidence, they assert that the circuit court's dismissal of plaintiff's complaint as a discovery sanction under Rule 219(c) was appropriate because even the negligent or inadvertent destruction of key evidence would justify such a sanction.

Recently, our supreme court discussed *Boyd, Shimanovsky*, and the topic of presuit destruction of evidence. See generally *Dardeen v.*

*Kuehling*, 213 Ill. 2d 329 (2004). In *Dardeen*, while delivering newspapers, the plaintiff was injured when he stepped into a hole in the defendant's sidewalk. *Dardeen*, 213 Ill. 2d at 332. After the defendant received the go-ahead from her insurer to fix the hole, the plaintiff sued the insurer for negligent spoliation of evidence. *Dardeen*, 213 Ill. 2d at 331. The supreme court, relying upon its decision in *Boyd*, a decision which it termed its "watershed pronouncement on spoliation of evidence," found that the insurer could not be held liable for negligent spoliation. *Dardeen*, 213 Ill. 2d at 335. Reciting the duty element for a spoliation claim it had outlined in *Boyd*, the court stated:

" 'The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute, [citation] or other special circumstance. Moreover, a defendant may voluntarily assume a duty by affirmative conduct. [Citation.] In any of the foregoing instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.' " (Emphasis omitted.) *Dardeen*, 213 Ill. 2d at 336, quoting *Boyd*, 166 Ill. 2d at 195.

In an *amicus* brief, the Illinois Trial Lawyers Association asked the court to "harmonize *Boyd*, where [it] held that, generally, there is no duty to preserve evidence," with its holding in *Shimanovsky* "that a potential litigant owes a duty to potential adversaries to take reasonable measures to preserve the integrity of relevant, material evidence." *Dardeen*, 213 Ill. 2d at 337. Instead of harmonizing the two, the court simply found *Shimanovsky* "inapposite." See *Dardeen*, 213 Ill. 2d at 339. The court noted that in *Shimanovsky*, it had "never mentioned *Boyd*, or spoliation," because "the central issue in *Shimanovsky* was whether the trial court could dismiss the plaintiff's complaint as a discovery sanction for the plaintiff's presuit destruction of evidence." *Dardeen*, 213 Ill. 2d at 340.

■ The lesson to be taken from this, we believe, is that the two remedies discussed in those cases, *i.e.*, a claim for negligent spoliation of evidence in *Boyd* and dismissal as a sanction under Rule 219(c) in *Shimanovsky*, are separate and distinct. See *Dardeen*, 213 Ill. 2d at 339-40. In other words, *Shimanovsky* and *Boyd* present a party confronted with the loss or destruction of relevant, material evidence at the hands of an opponent with "two roads diverged in a wood."[1] He may either (1) seek dismissal of his opponent's complaint under Rule

---

[1] This language taken from Robert Frost's poem *"The Road Not Taken"* (1915).

219(c) or (2) bring a claim for negligent spoliation of evidence. The mode of relief most appropriate will depend upon the opponent's culpability in the destruction of the evidence. The former requires conduct that is "deliberate [or] contumacious or [evidences an] unwarranted disregard of the court's authority" and should be employed only "as a last resort and after all the court's other enforcement powers have failed to advance the litigation." *Shimanovsky*, 181 Ill. 2d at 123. The latter requires mere negligence, the failure to foresee " 'that the [destroyed] evidence was material to a potential civil action.' " *Dardeen*, 213 Ill. 2d at 336, quoting *Boyd*, 166 Ill. 2d at 195. Because BBW and Globaltech chose to take the Rule 219(c) road, any reliance upon *Boyd* or its progeny to support the circuit court's sanction is inappropriate.

Moreover, we reject defendants' reliance upon those cases which have found "that negligent or inadvertent destruction or alteration of evidence may result in a harsh sanction, including dismissal, when a party is disadvantaged by the loss." *Farley Metals, Inc. v. Barber Colman Co.*, 269 Ill. App. 3d 104, 110, 645 N.E.2d 964 (1994), citing *Graves v. Daley*, 172 Ill. App. 3d 35, 526 N.E.2d 679 (1988); *Stegmiller v. H.P.E., Inc.*, 81 Ill. App. 3d 1144, 401 N.E.2d 1156 (1980); *Marrocco v. General Motors Corp.*, 966 F.2d 220 (7th Cir. 1992); see also *Kambylis v. Ford Motor Co.*, 338 Ill. App. 3d 788, 794, 788 N.E.2d 1 (2003); *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.*, 262 Ill. App. 3d 636, 641, 634 N.E.2d 1319 (1994), citing *State Farm Fire & Casualty Co. v. Frigidaire, Division of General Motors Corp.*, 146 F.R.D. 160 (N.D. Ill. 1992); *Jones v. Goodyear Tire & Rubber Co.*, 137 F.R.D. 657 (C.D. Ill. 1991). It is only where a party's conduct can be characterized as "deliberate, contumacious or [an] unwarranted disregard of the court's authority" that the drastic sanction of dismissal is justified, and, even then, only "as a last resort and after all the court's other enforcement powers have failed to advance the litigation." *Shimanovsky*, 181 Ill. 2d at 123; see also *Nationwide Mutual Insurance Co. v. Kogut*, 354 Ill. App. 3d 1, 7-8 (2004); *Vortanz v. Elmhurst Memorial Hospital*, 179 Ill. App. 3d 584, 590, 534 N.E.2d 625 (1989); *Kubian v. Labinsky*, 178 Ill. App. 3d 191, 196, 533 N.E.2d 22 (1988); *Barnes v. Black & Decker Manufacturing Co.*, 135 Ill. App. 3d 700, 708, 481 N.E.2d 1200 (1984).

In those instances where evidence is destroyed due to mere negligence, a prejudiced litigant can seek redress by bringing a claim for negligent spoliation of evidence against the responsible party. The question here is whether plaintiff's conduct leading to the destruction of the end table, couch, and carpet was sanctionable and, if so, whether the circuit court's sanction of dismissal was appropriate.

In a strict-products-liability case, the preservation of the allegedly defective product is important both to the proof of and defense to liability. *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1138, 815 N.E.2d 476 (2004). Even prior to the filing of such a lawsuit, a potential litigant owes a duty to take reasonable measures to preserve the integrity of relevant and material evidence. *Shimanovsky*, 181 Ill. 2d at 121. Underlying this duty is the fear that if a court were unable to sanction a party for the presuit destruction of evidence, a potential litigant could circumvent discovery rules or escape liability simply by destroying the proof prior to the filing of a complaint. *Shimanovsky*, 181 Ill. 2d at 121.

■ However, even where evidence is destroyed, altered, or lost, a defendant is not automatically entitled to a specific sanction. *Stringer*, 351 Ill. App. 3d at 1139. Rather, Illinois Supreme Court Rule 219(c) grants the circuit court the discretion to impose a sanction, including dismissal of the cause of action, upon any party who unreasonably refuses to comply with any discovery rule or any order entered pursuant to such rule. *Shimanovsky*, 181 Ill. 2d at 120, citing 166 Ill. 2d R. 219(c).

In fashioning an appropriate sanction, a trial court must consider the following: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314, 614 N.E.2d 1194 (1993). Of these factors, none is determinative. *In re Estate of Kline*, 245 Ill. App. 3d 413, 433 (1993).

Moreover, in crafting a just order, the circuit court must remember that the purpose of a sanction is not merely to punish the dilatory party, but to effectuate the goals of discovery. See *Buffington v. Yungen*, 322 Ill. App. 3d 152, 154, 748 N.E.2d 844 (2001). A just order is one that is "commensurate with the seriousness of the violation" (*Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 55, 795 N.E.2d 808 (2003)) and "ensures both the accomplishment of discovery and a trial on the merits" (*Buffington*, 322 Ill. App. 3d at 154).

■ That being said, because an order to dismiss with prejudice is a drastic sanction (as its nickname, the "death penalty" of sanctions, suggests), it should be invoked "only in those cases where the party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority"; employed only "as a last resort and after all the court's other enforcement powers have failed to advance the litigation." *Shimanovsky*, 181 Ill. 2d at 123.

■ The reversal of a trial court's imposition of a particular sanction is only justified when the record establishes a clear abuse of discretion. *Boatmen's National Bank*, 155 Ill. 2d at 314. To determine if the trial court abused its discretion, a reviewing court must look to the criteria upon which the trial court relied in making its determination. *Shimanovsky*, 181 Ill. 2d at 123. Plaintiff's conduct here, though potentially negligent, could hardly be characterized as "deliberate, contumacious, or [an] unwarranted disregard of the court's authority."

■ First, plaintiff did not engage in any "knowing and willful defiance of the discovery rules or the trial court's authority." *Shimanovsky*, 181 Ill. 2d at 129. The destruction of the end table, couch and carpet occurred long before plaintiff filed his lawsuit. Second, the carpet belonged to Kubasak, and it is questionable whether he could have compelled her to preserve it. Third, even if he could have preserved this evidence, plaintiff had no knowledge that it might have been relevant and material; his initial theory was that two lamps, recovered by his attorney shortly after the fire, had been the cause. Finally, and perhaps most importantly, plaintiff played no role in, nor had any notice of, the destruction of the evidence which defendants claim was essential to their defense. *Stringer*, 351 Ill. App. 3d at 1139-40 (stating that "Rule 219(c) permits sanctions only where a party unreasonably fails to comply with a discovery order" and that a "party who had nothing to do with the destruction of evidence cannot be said to have unreasonably failed to comply with a discovery order" because "[b]efore noncompliance can be unreasonable, a party must have been in a position to comply").

Though a potential litigant owes a duty to take reasonable measures to preserve the integrity of relevant and material evidence (*Shimanovsky*, 181 Ill. 2d at 121), defendants have offered no "reasonable measures" that plaintiff could have undertaken, but failed to undertake, to protect this evidence, short of treating the second floor of the house owned by Kubasak like a crime scene. We could not find, nor have the parties cited, any case, either in Illinois or elsewhere, that has required such action.

Plaintiff may have been both foolhardy to pin his hopes on the lamps as being the cause of the fire and negligent in failing to preserve the end table, couch and carpet. Such conduct, however, is not enough to support dismissal of his complaint as a discovery sanction under Rule 219(c). *Shimanovsky*, 181 Ill. 2d at 123. Therefore, we find that the circuit court abused its discretion in imposing it and reverse the dismissal of plaintiff's complaint. *Stringer*, 351 Ill. App. 3d at 1139-40 (finding that because no discovery violation occurred where the injuri-

ous object was destroyed without the plaintiff's knowledge, the circuit court's refusal to impose sanctions was not an abuse of discretion).

Moreover, independent of our finding that the circuit court abused its discretion in dismissing plaintiffs complaint as a Rule 219(c) sanction, we reverse the court's dismissal of plaintiff's claims against Kubasak premised upon her failure to install and maintain working smoke detectors in violation of the Smoke Detector Act.

■ Though the common law did not impose a civil duty upon landlords to install smoke detectors in property leased to a tenant, section 3 of the Smoke Detector Act provides an exception and creates an implied private right of action. *Bybee v. O'Hagen*, 243 Ill. App. 3d 49, 52-53, 612 N.E.2d 99 (1993); *Todd v. Smith*, 267 Ill. App. 3d 699, 701, 642 N.E.2d 878 (1994). Under sections 3(a) and (d), an "owner of a structure" is required to place a working smoke detector within 15 feet of "every room used for sleeping purposes" and make "reasonable efforts to test and maintain detectors in common stairwells and hallways." 425 ILCS 60/3(a), (d) (West 1996).

■ A landlord's liability under this statute does not hinge upon the occurrence of a fire, much less cause of that fire; only the failure to provide, test, and maintain working smoke detectors. 425 ILCS 60/3(a), (d) (West 1996). The absence of the end table, couch and carpet is completely irrelevant to the issue of Kubasak's liability to plaintiff under the Smoke Detector Act. Thus, the circuit court had no basis to dismiss plaintiff's claims against Kubasak as a sanction for failing to preserve evidence.

BBW, Globaltech, and Kubasak's argument as to why plaintiff's claims against Kubasak were properly dismissed is of the "cart before the horse" variety. They contend that plaintiff's failure to preserve the evidence impaired Kubasak's ability to "prosecute her counterclaims against" BBW and Globaltech. While that might be so, it is not a sufficient basis for dismissing plaintiff's claims against Kubasak premised upon the Smoke Detector Act; claims which do not depend in the least on the presence or absence of any of the evidence that was destroyed.

## II. EXPERT AFFIDAVITS

Plaintiff next contends that the circuit court erred when it struck his expert witnesses' affidavits *sua sponte*. He argues that he had no notice from the court that such an action was imminent and that the affidavits were properly based upon sufficient factual data.

■ Defendants contend that despite the fact that no motion to strike the affidavits was pending, plaintiff had sufficient notice based upon comments made by the circuit court during oral argument on BBW's motion for sanctions. Defendants further argue that the circuit

court properly struck the experts' affidavits because they lacked an adequate foundation.

It is poor practice for a circuit court to simply strike affidavits, *sua sponte*, without some sort of motion pending, be it oral or written. *Botello v. Illinois Central R.R. Co.*, 348 Ill. App. 3d 445, 454, 809 N.E.2d 197 (2004) (finding that it was not "good practice" for the trial court to *sua sponte* strike affidavits filed in support of a motion to change venue based upon *forum non conveniens* on the basis that those affidavits contained hearsay). In this case, no defendant had filed a motion for summary judgment against plaintiff, much less a motion to strike his experts' affidavits. Though the circuit court may have intimated an uncomfortableness with the sufficiency of plaintiff's experts' affidavits, "the trial court, as a matter of good practice, should not have intervened before [defendants] first moved to strike the affidavit." *Botello*, 348 Ill. App. 3d at 454. Thus, in the absence of a motion to strike or a motion for summary judgment, the circuit court erred in *sua sponte* striking plaintiff's experts' affidavits. On remand, the parties are free to file the proper motions if they so desire.

## III. STATE FARM'S LIABILITY

● ■ State Farm contends that, as Kubasak's insurer, it owed no duty to preserve evidence and, thus, it could not be held liable for negligent spoliation of evidence. State Farm requests that this court affirm the circuit court's dismissal order in its entirety because doing so would also eliminate the third-party claim for negligent spoliation of evidence asserted against it by BBW and the counterclaim under that same theory asserted by Globaltech.

In its brief, however, State Farm urges upon us the same arguments contained in its motion for summary judgment that was pending before the circuit court prior to the court's dismissal of plaintiff's complaint as a Rule 219(c) discovery sanction. The circuit court did not rule upon State Farm's motion. Instead, in dismissing plaintiff's claims, the court found that all of the other claims "among and between the parties" were moot. And rightfully so, because once plaintiff's claims against BBW and Globaltech were dismissed, both the need and the standing for them to assert either a third-party claim or counterclaim against State Farm for negligent spoliation of evidence was eviscerated. However, because we are reinstating plaintiff's claims, those claims "among and between the parties" are no longer moot. In addition, any motions, including State Farm's motion for summary judgment, that were pending prior to the circuit court's order dismissing plaintiff's complaint as a Rule 219(c) discovery sanction are also reinstated.

BBW contends that State Farm has waived its motion for summary judgment and any argument presented therein because it failed to "obtain a ruling" from the circuit court on its motion. The cases BBW relies upon, *King v. Paul J. Krez Co.*, 323 Ill. App. 3d 532, 752 N.E.2d 605 (2001), and *Woolums v. Huss*, 323 Ill. App. 3d 628, 752 N.E.2d 1219 (2001), do not support its argument. See *King*, 323 Ill. App. 3d at 534 (finding one of the defendant's bases for summary judgment was waived based upon the rule that "[a]n alleged error is not preserved for review if the trial court fails to rule upon it"); *Woolums*, 323 Ill. App. 3d at 633 (stating that when "a party moves to strike an affidavit filed in summary judgment proceedings, it is that party's duty to bring his motion to the attention of the trial court and to get a ruling on the motion. Failure to obtain such a ruling will operate as a waiver of the objections to the affidavit"). Here, once the circuit court found that the claims asserted against State Farm were moot, it could not rule on the substantive merits of State Farm's motion for summary judgment on those claims. Because the circuit court did not rule upon the substantive merits of State Farm's motion, we decline to do so here.

### IV. BBW'S CROSS-APPEAL

■ BBW filed a cross-appeal "relative to the dismissal of its counterclaim against" Kubasak, plaintiff, and Globaltech, as well as its third-party complaint against State Farm. BBW argues that "[s]hould this Honorable Court reverse the Trial Court's order dismissing plaintiff's causes of action, BBW's counterclaims and third-party claims should be reinstated, since it filed the necessary cross-appeal to vest the court with jurisdiction to rule on the dismissal of its counterclaims and third-party claim." BBW also argues that because neither Kubasak, State Farm, nor Globaltech filed cross-appeals, they have waived any right to have their counterclaims reinstated.

Initially, this court has no jurisdiction over BBW's cross-appeal because it poses a hypothetical question: If this court should reverse the circuit court's order dismissing plaintiff's causes of action, whether BBW's counterclaims and third-party claims should be reinstated. It is axiomatic that the existence of an actual controversy is an essential prerequisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523, 759 N.E.2d 509 (2001). Because the resolution of BBW's argument depends upon the resolution of plaintiff's appeal, this court has no power to consider it.

Moreover, even if this court has jurisdiction, BBW's filing of a cross-appeal from the judgment of the circuit court was improper. In

general, a party cannot complain of error that does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from that judgment. *Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur*, 317 Ill. App. 3d 737, 743, 739 N.E.2d 1049 (2000). Even though a successful party may not agree with the reasons, conclusions or findings of the lower court, it is improper to provide that successful party with a forum in a reviewing court. *Geer v. Kadera*, 173 Ill. 2d 398, 414, 671 N.E.2d 692 (1996). Here, there was no part of the circuit court's ruling that was adverse to BBW. The court did not rule on the substance of any motion or claim against BBW; it merely ruled that once plaintiff's claims were dismissed, the rest was moot. Thus, we dismiss BBW's cross-appeal as improper. We reverse the decision of the circuit court and reinstate all claims that the court either dismissed or found were moot due to that dismissal and all motions for summary judgment that were pending before the circuit court. On remand, the circuit court may, within its discretion, allow the parties the opportunity to refile their motions for summary judgment in light of this ruling, file additional memoranda in support and in opposition to those motions, grant additional time extensions, and/or permit any other docketing requests it sees fit.

Reversed and remanded with instructions.

REID, P.J., and GREIMAN, J., concur.