No. 3–07–0242

_____

Filed April 14, 2008

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| ELIZABETH S. BERGLAND, | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | for the 14th Judicial Circuit, |
| | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | No. 06–MR–546 |
| | ) | |
| THE DEPARTMENT OF PUBLIC | ) | |
| HEALTH and ROSEWOOD CARE | ) | Honorable |
| CENTER OF MOLINE, | ) | F. Michael Meersman, |
| Defendants-Appellees. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the opinion of the court:

_____

Plaintiff Elizabeth Bergland sought administrative review of defendant Illinois Department of Public Health's (IDPH) grant of summary judgment in favor of defendant Rosewood Care Center, which denied Bergland copies of her mother's health care records. The trial court affirmed IDPH's decision, finding that Rosewood's refusal to provide the records was proper under both the Health Care Surrogate Act (Surrogate Act) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). 755 ILCS 40/1 *et seq*. (West 2004); 42 U.S.C. §1320 *et seq*. (2000). Bergland appealed. We reverse the trial court's affirmance of IDPH's decision.

FACTS

Plaintiff Elizabeth Bergland's mother, Mildred Strutz, was a patient at Rosewood Care Center in Moline, from September 24, 2004, through November 5, 2004. On December 8, 2004, Mildred and her husband, Eric, submitted a written request to Rosewood, asking that a copy of

Mildred's medical records be to sent to their daughter, Bergland. The letter was signed by both Mildred and Eric but identified Bergland as the sole contact as well as the recipient of the records. Included in Mildred's file at Rosewood was a form entitled *Health Care Surrogate: Physician Certification*. The document, which was dated October 2004, and signed by two nonidentified physicians, indicated that two of Mildred's other daughters were appointed as surrogate decision makers regarding Mildred's health care decisions. Mildred's husband was not identified as a surrogate. Notes in Mildred's file at Rosewood state that Eric "appear[ed] to be very confused and unable to make informed[,] competent decisions" on his wife's behalf.

After receiving the request for records, Rosewood's administrator contacted one of the identified surrogates, Teri Peschang, and sent her a copy of Bergland's request for Mildred's records. Peschang would not consent to a release of the records to Bergland. The administrator's notes indicated Peschang stated, "I don't know what Susan is up to but it has to be NO good + [*sic*] I am not going to be a part of it." Based on Peschang's refusal of consent, Rosewood denied Bergland's request.

Bergland thereafter filed a complaint with IDPH, alleging that Rosewood violated the Nursing Home Care Act (Act) (210 ILCS 45/2-104(d) (West 2004)) by denying Bergland's request for Mildred's records. IDPH investigated the complaint and found insufficient evidence to cite Rosewood for a violation of the Act. Bergland filed a request for a hearing with an administrative law judge (ALJ). IDPH responded with two motions for summary judgment and Bergland filed a cross-motion for summary judgment. Only one of IDPH's motions appears in the record; Bergland's cross-motion does not appear. Similarly, the record contains only one of the transcripts from the IDPH hearings.

2

Following a hearing on IDPH's summary judgment motion, the ALJ recommended that IDPH's motion be granted, finding that there were no issues of material fact, that the Department properly investigated Bergland's complaint, and its determinations were not in error. The ALJ concluded that Rosewood properly relied on the surrogate's denial of the release of Mildred's records and that Rosewood was required to rely on the surrogate's decision pursuant to Surrogate Act. The IDPH director adopted and affirmed the ALJ's determination and issued a final order.

Sometime during the proceedings before the ALJ, Peschang consented to release of Mildred's records to Bergland. Bergland, however, contends that she did not receive all the records. She petitioned for judicial review. IDPH answered with the IDPH record attached. Arguments were held before the trial court, which raised *sua sponte* that HIPAA barred the release of Mildred's records. The trial court also found that once Mildred was discharged from Rosewood, the Surrogate Act no longer applied. Notwithstanding that conclusion, the trial court went on to determine that Rosewood properly relied on the health care surrogate's decision when it denied Bergland copies of Mildred's records. Bergland appealed.

ANALYSIS

As a threshold issue, we must determine whether this appeal is moot. According to IDPH, although Bergland received the requested records pursuant to Peschang's subsequent consent to disclosure, the cause is not moot because Bergland's claim challenges the determination by IDPH that Rosewood did not violate Mildred's right to access her records pursuant to the Nursing Home Care Act when it denied the request for records.

The existence of an actual controversy is a prerequisite of appellate jurisdiction; a reviewing court generally will not decide moot issues. Adams v. Bath & Body Works, Inc., 358 Ill. App. 3d

3

387, 399, 830 N.E.2d 645, 657 (2005). A case on review is moot when the issues in the trial court no longer exist because subsequent events that occurred after the appeal had been filed make it impossible for the appellate court to grant effective relief. Whitten v. Whitten, 292 Ill. App. 3d 780, 784, 686 N.E.2d 19, 21-22 (1997). However, a reviewing court may reach the merits of a moot issue if (1) it is public in nature; (2) it is desirable to provide an authoritative determination to offer guidance to public officers; and (3) it is likely the question would reappear. Whitten, 292 Ill. App. 3d at 784, 686 N.E.2d at 22.

Because Peschang ultimately consented to the release of Mildred's records, this court cannot order the requested relief, *i.e.*, access to Mildred's records. However, the dispositive issue before us is whether the Surrogate Act applies to a discharged nursing home resident. As such, the issue is public in nature. There is no case law addressing the issue, so it desirable to provide a determination for future guidance, and it is likely the question will reappear. Accordingly, we review the case under the public interest exception to the mootness doctrine.

We turn now to the question of whether IDPH erred in finding that Rosewood properly relied on the surrogate's decision to deny Bergland access to her mother's medical records. Bergland contends that IDPH wrongly relied on the Surrogate Act to deny Mildred's request for records. According to Bergland, the Surrogate Act does not apply because Mildred had been discharged from Rosewood at the time of the request.

This issue is one of statutory interpretation. The fundamental rule employed when we construe a statute is to ascertain and give effect to the intention of the legislature.

4

<u>Ficke v. Evangelical Health Systems</u>, 285 Ill. App. 3d 886, 892, 674 N.E.2d 888, 892 (1996). The words of the statute are the best indicator of legislative intent. <u>Ficke</u>, 285 Ill. App. 3d at 892, 674 N.E.2d at 892. When the language is clear, we do not look to other tools of interpretation. <u>Ficke</u>, 285 Ill. App. 3d at 893, 674 N.E.2d at 892. Our review is *de novo*. <u>City of Belvidere v. Illinois State Labor Relations Board</u>, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).

The Nursing Home Care Act provides that every resident shall "be permitted to inspect and copy all his clinical and other records concerning his care and maintenance kept by the facility or by his physician." 210 ILCS 45/2-104(d) (West 2004). Federal regulations also require that a nursing home resident have access to her records. 42 C.F.R. 483.10(b)(2)(i) (2005). The Surrogate Act applies to "patients who lack decisional capacity or who have a qualifying condition." 755 ILCS 40/15 (West 2004). A surrogate is entitled to "have the same right as the patient to receive medical information and medical records and to consent to disclosure." 755 ILCS 40/25(e) (West 2004). A health care provider may rely on the authority of the surrogate decision maker as though the decision had been made by a patient with decisional capacity. 755 ILCS 40/30(a) (West 2004). The Surrogate Act requires a health care facility to "maintain any advance directives proffered by the patient or other authorized person, including a do

5

not resuscitate order, a living will, a declaration for mental health treatment, or a power of attorney for health care, in the patient's medical records for the duration of the patient's stay." 755 ILCS 40/15 (West 2004).

IDPH found that the Surrogate Act applied and that Rosewood was required to rely on the decision of the surrogate in denying Bergland's request for Mildred's records. The trial court intimated that the Surrogate Act did not apply to Mildred because she had been discharged from Rosewood. We agree with the trial court. The Surrogate Act requires the health care provider to maintain a patient's advance directives for the duration of the patient's stay. We recognize that the statutory provision does not expressly enumerate a surrogate appointment form. However, because the Surrogate Act generally, and the instant provision specifically, applies to patients who lack decisional capacity, it stands to reason that a surrogate appointment form would be among those to be included with other pertinent medical and treatment decision documents in a patient's file. It further follows that if documents such as a power of attorney for health care must be maintained only for the duration of the patient's stay, the appointment of a surrogate to make various treatment decisions should similarly be limited. Our interpretation is consistent with the durational limitations set forth in the Nursing Home Care Act, which provides that the nursing home is "relieved from any

6

responsibility for the resident's care, safety or well-being" once a resident is discharged.  210 ILCS 45/2-111 (West 2004).

Accordingly, based on our interpretation of the Surrogate Act, Rosewood was not required to obtain a surrogate's consent prior to the release of Mildred's records.  Had Mildred remained a patient at Rosewood, the facility's reliance on the surrogate appointment and the surrogate's decision would have been proper.  However, because Mildred was no longer a patient when the request for records was made, Rosewood erred in refusing to release Mildred's records based on the surrogate's refusal to consent.  We are cognizant that Bergland has since obtained Mildred's records from Rosewood.  Nevertheless, and pursuant to the public interest exception to the mootness doctrine, we hold that once a patient who lacks decisional capacity is no longer under the care of a health care provider, the Surrogate Act ceases to apply and the nominations for health care surrogates are terminated.  Therefore there was no basis to refuse a patient's request for records.

We note with concern that although the Surrogate Act requires a patient's physician to opine as to the cause, nature and duration of the patient's decisional incapacity, the surrogate certificate in the instant case fails to do so.  Moreover, the certifying physician failed to delineate why Mildred's husband was not chosen as a surrogate, also contrary to the statutory directive.  Because

7

we have concluded that the surrogacy appointment ceased to apply upon Mildred's discharge from Rosewood, we do not examine the effects, if any, of the inadequacies of the surrogate certificate. Moreover, as determined by IDPH in response to Bergland's challenge, the propriety of the surrogate appointment was beyond the scope of its review and ours as well. The Surrogate Act indicates that one who wishes to challenge a surrogate's appointment is required to initiate a guardianship proceeding. 755 ILCS 40/25(d) (West 2004). We raise the point only to emphasize that had the statutory mandates been followed by the certifying physician, many of the issues Bergland raises regarding the sufficiency of the surrogacy certificate would have been avoided.

Based on our disposition of the above issue, we need not reach the other issues Bergland raised on appeal.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and the decision of the IDPH is set aside.

Reversed.

SCHMIDT, J., concurs.

CARTER, J., specially concurring:

I specially concur with the conclusion reached by the majority that Rosewood, once Mildred was no longer a patient and was discharged, could no longer rely on the surrogates' direction and decision. Thus, I agree that Rosewood erred in refusing to release

8

Mildred's records based on the surrogates' refusal to consent.

The Health Care Surrogate Act requires a health care facility, when the patient lacks decisional capacity, to make a reasonable inquiry as to the availability of a health care agent under the Powers of Attorney for Health Care Law and, when no agent is authorized or available, the provider must make a reasonable inquiry into the availability of possible surrogates. 755 ILCS 40/25 (West 2006). It also requires the facility to maintain any advance directives proffered by the patient or another authorized person, such as do not resuscitate orders, living wills, or a power of attorney for health care in the patient's medical records *for the duration of the patient's stay*. 755 ILCS 40/15 (West 2006) (emphasis added).

I agree with the majority's position that the Surrogate Act ceases to apply once a patient is discharged and that a health care facility, at that point, can no longer rely on the direction of the surrogate. Obviously, there is an omission in the statute providing no statutory direction for requests by a patient who still might be disabled, but is no longer receiving care at the facility. I would note that statutes such as this that impose limitations on an individual's rights are to be strictly construed. See generally In re Nancy A., 344 Ill.App.3d 540, 552, 801 N.E.2d 565, 577 (2003). Thus, without a clear indication by statute of the extent of the duration of the appointment of the surrogate for

9

post-discharge matters, I am compelled to find that the surrogates' authority terminated with Mildred's discharge. If the legislature desires to extend the authority of the surrogate's appointment, they must explicitly do so. Thus, I concur with the conclusion of the majority that the facility in this case had to respond and acquiesce to the patient's request for records without consulting with the surrogates.

I also agree that the issue regarding the duration of the surrogates' authority should be decided and that the standard of review is <u>de</u> <u>novo</u>.

No. 3--07--0242
_____

Filed April 14, 2008/May 29, 2008
                    IN THE APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                              A.D., 2008

ELIZABETH S. BERGLAND,          )       Appeal from the Circuit Court
                                )       for the 14th Judicial Circuit,
     Plaintiff-Appellant,       )       Rock Island County, Illinois
                                )
     v.                         )       No. 06--MR--546
                                )
ILLINOIS DEPARTMENT OF PUBLIC   )
HEALTH and ROSEWOOD CARE        )
CENTER OF MOLINE,               )
                                )       Honorable F. Michael Meersman,
     Defendants-Appellees.      )       Judge, Presiding
_____

     Specially Concurring Opinion Upon Denial of Rehearing
     JUSTICE SCHMIDT, specially concurring:
_____

     I concur in the opinion only to the extent that it holds

that "once a patient who lacks decisional capacity is no longer

under the care of a health care provider, the Surrogate Act

ceases to apply and the nominations for health care surrogates

are terminated." Slip op. at 9. Furthermore, I concur in the

judgment. I fear that the statement, "Therefore there was no

basis to refuse a patient's request for records" (slip op. at 9)

is overbroad. While the Surrogate Act would not provide a basis

to refuse a patient's request for records under the circumstances

before us, I have no idea whether there was any other basis to

refuse the patient's request for records and, therefore, I do not

concur in that language.