# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Cronin v. Kottke Associates, LLC*, 2012 IL App (1st) 111632

---

| | |
|---|---|
| Appellate Court Caption | WALTER S. CRONIN and RONALD L. ANDERSON, Plaintiffs-Appellants, v. KOTTKE ASSOCIATES, LLC, an Illinois Limited Liability Company, and JOSEPH VANDEPUTTE, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-11-1632 |
| Filed | July 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a complex action arising from a dispute over an alleged partnership to invest in commodities, the trial court had authority to enter a sanction of dismissal with prejudice based on plaintiffs' claimed disregard of the trial court's orders for scheduling, but even though plaintiffs' counsel may have acted without full respect for the trial court's procedures, the dismissal of plaintiffs' action with prejudice was a clear abuse of discretion where the conduct of plaintiffs' counsel was not "deliberate, contumacious, or unwarranted disregard" of the court's authority, there was not a pattern of misconduct, and the dismissal with prejudice was the first sanction imposed on plaintiffs, contrary to case law requiring progressively harsher sanctions. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CH-12756; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Reversed; cause remanded. |

Counsel on
Appeal

SNR Denton US LLP, of Chicago (William M. Gantz, of counsel), for appellants.

Vanasco Genelly & Miller, of Chicago (Daniel A. Genelly and Matthew M. Showel, of counsel), for appellees.

Panel

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Karnezis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs appeal from the dismissal of their suit with prejudice, pursuant to Illinois Supreme Court Rule 219(c)(v) (Ill. S. Ct. R. 219(c)(v) (eff. July 1, 2002)), as a sanction for their failure to comply with a scheduling order regarding final trial preparation procedures as set forth in a standing order of the trial court. For the reasons that follow, we reverse.

¶ 2                                      I. BACKGROUND

¶ 3    In the 1990s, plaintiffs Walter S. Cronin and Ronald L. Anderson, commodity brokers, became associated with defendant Kottke Associates, LLC (Kottke), a commodity trading firm founded by Neal Kottke. In a two-count complaint, filed on December 11, 2006, plaintiffs claimed they formed a partnership with defendant Kottke and defendant Joseph Vandeputte, a commodities analyst, for the purpose of investing in agricultural commodities. According to the complaint, plaintiffs together were to receive one-third of the partnership's profits. Plaintiffs asserted that defendants wrongfully reduced their interest in the profits and caused a dissolution of the partnership. Plaintiffs claimed defendants breached their fiduciary and loyalty duties and "unjustly enriched" themselves. Plaintiffs sought recovery of lost fees of $2,536,000, plus interest, for the period ending May 2006, and an accounting for monies owed plaintiffs after June 1, 2006. The complaint included a jury demand. In their answers, defendants denied that they had formed a partnership with plaintiffs.

¶ 4    Plaintiffs were represented by John J. McHugh III, an Ohio lawyer admitted *pro hac vice*, and local attorney, Christopher Berghoff of Berghoff & Berghoff, Ltd. Defendants were represented by the law firm of Vanasco, Genelly & Miller.

¶ 5    The parties engaged in extensive written and oral discovery. While defendants did not bring a discovery compliance motion against plaintiffs, nor was a sanction order entered against plaintiffs for any type of discovery violation, defendants later claimed there were some missteps during discovery which supported their request for the sanction of dismissal with prejudice. For example, and without factual proof in the record, defendants maintained

-2-

plaintiffs had produced documents during discovery in a manner which violated procedural rules. Further, while plaintiffs initially provided defendants with unexecuted responses to requests to admit within an agreed time period, they were later granted leave to serve signed responses. Additionally, plaintiffs complied with expert discovery after having been granted extensions of time to do so. Finally, defendants moved to quash subpoenas for documents which plaintiffs issued and served upon 25 individuals or entities, including current or former Kottke customers. While the trial court granted the motion, it also allowed plaintiffs leave to reissue subpoenas with certain limitations.

¶ 6       The parties filed cross-motions for summary judgment. Each motion was separately and fully briefed. The parties presented a significant amount of written material as to the cross-motions, which spans six of the nine volumes contained in the original record on appeal. This material includes depositions, pleadings, answers to written discovery, and other exhibits. Plaintiffs argued that there was no dispute that they had formed a partnership or joint venture with defendants and sought a judgment for lost profits in the amount of $2,599,258, plus interest, for defendants' claimed breaches of fiduciary duties and a "full and complete accounting." Defendants argued that the undisputed facts established a partnership had not been formed and, even if there had been a partnership, the partnership had ended and plaintiffs were owed no additional compensation. The trial court, after a hearing, denied the motions.

¶ 7       A September 21, 2010, order set the case for a settlement conference to be held on October 29, 2010. This order did not refer to a standing order. However, the parties agree that the trial court had a standing order which, as set forth in that order, "establish[ed] general pretrial and trial rules and procedures intended to aid attorneys and litigants." The provisions of the standing order relating to settlement conferences required parties to serve a memorandum "[n]o later than three days before the initial pretrial settlement conference" that was to include:

> "(1) a statement of the case; (2) an outline of the causes of action, defenses and counterclaims; (3) a statement of the legal and factual issues presented; (4) the relief sought, including damages, and the basis therefor; and (5) the status of settlement negotiations."

The standing order also required that counsel verify whether a jury demand had been made as to any claim.

¶ 8       On the day the settlement conference was scheduled, October 29, 2010, plaintiffs filed an agreed motion to continue the conference because Mr. McHugh was involved in a mediation in Ohio on the date set. The court reset the settlement conference for December 17, 2010.

¶ 9       Plaintiffs presented a four-page memorandum on the day of the rescheduled settlement conference. However, there is nothing in the record to show that defendants objected or that the settlement conference was impeded in any way because of the untimeliness of the memorandum.

¶ 10      In their memorandum, plaintiffs stated that: "Most of the material facts are not disputed.

The seminal legal question is the definition or description of the legal relationship between the parties." Plaintiffs generally outlined their position as to the existence of a partnership or joint venture with defendants, but explained that: "The legal contentions advanced by the parties have been extensively briefed [on the cross-motions for summary judgment], and are not further recited here." Plaintiffs contended they were entitled to damages in lost compensation of $2,599,258 and, under the "principles of unjust enrichment," an additional recovery of $3 million based on monies earned by defendants on the wrongfully withheld funds. Plaintiffs' memorandum was silent as to whether they continued in their jury demand. Defendants submitted a pretrial settlement memorandum, which included 10 pages of detailed discussion relating to the nature of the case, issues, and relief sought.

¶ 11    After the suit was not resolved at the December 17, 2010, settlement conference, the trial court set the case for trial–for the first time–in an order entered the same day. That order stated:

> "Trial is scheduled for May 16-23, 2011 at 1:30 p.m.; Final pre-trial conference on May 9 at 1:30 p.m.; Documents and demonstrative evidence will be exchanged by May 2; Evidentiary objections due on May 9; Pre-trial memoranda due on May 6; Motions *in limine* due at final Pre-trial."

¶ 12    Although this order did not refer to the standing order, the standing order contained procedures applicable to a final pretrial conference and trial, including the following provisions:

> "A final pretrial conference will be scheduled at the same time a date is set for trial. **Once set trial dates are firm and will not be rescheduled absent compelling circumstances.** \*\*\*
>
> At the time the Court sets the date for the final pretrial conference, it will also order the preparation of a final pretrial memorandum by each party. The purposes of [these] memoranda [are] to limit the issues to be decided at trial, to ensure that essential trial preparation is done in a timely fashion, and to eliminate unnecessary delays during the course of a trial." (Emphasis in original.)

The standing order warned: "Failure to comply with the Court's orders regarding final pretrial memoranda may result in the imposition of sanctions pursuant to Supreme Court Rule 218 and/or 219."

¶ 13    According to the standing order, the final pretrial memorandum (trial memorandum) was to be served on each party and on the court five days before the final pretrial conference (trial conference). The court's scheduling order, however, provided that the trial memorandum in this case should be filed by May 6, only three days before the May 9 trial conference. The standing order stated that the trial memorandum was to include, *inter alia*, the estimated length of trial, short statement of the case, fact stipulations, an affidavit of compliance with Illinois Supreme Court Rule 237 (Ill. S. Ct. R. 237 (eff. July 1, 2005)), certifications regarding jury demands, lists of witnesses who will or may be called to testify, and numbered exhibits with any agreement regarding admissibility. The standing order also required that all counsel should confer concerning objections to exhibits prior to the final pretrial

conference, with copies of exhibits to be served on the court five "court days" before trial, *i.e.*, May 9. However, the scheduling order required the exhibit exchange by May 2.

¶ 14 Defendants sought to comply with the court's trial preparation requirements by sending a letter to Mr. McHugh, dated April 15, 2011, proposing 84 stipulations of fact. Additionally, by letter dated April 21, 2011, and again addressed to Mr. McHugh, defendants requested the originals of two e-mails pursuant to Rule 237. It appears Mr. McHugh did not respond to these letters.

¶ 15 During this period before trial, defendants also supplemented their discovery responses, producing an additional 419 documents on March 28, 2011, and 39 documents on April 1, 2011. Plaintiffs, in reviewing this supplemental discovery, believed additional documents, in particular e-mails, had still not been produced. Plaintiffs also concluded that this new discovery production included e-mails which defendants had previously asserted did not exist. Counsel for both sides exchanged letters, from April 1 through April 11, in an attempt to resolve the dispute. In his letters to defense counsel, Mr. McHugh said he was prepared to pursue a forensic review of defendants' computers and seek a hearing before the trial judge, but he believed the trial judge "would expect us to address the matter ourselves, in good faith, and in consideration of our professional and our clients' legal responsibilities." He also expressed a wish to promptly reach an agreement with defense counsel so this issue did not "jeopardize our trial date" or "consume most of our discussion" at the trial conference. In his April 8 letter, Mr. McHugh stated:

"Like you, and perhaps your clients, we are anxious to try this matter to its proper conclusion. We do not, however, concede to anything less than a level playing field. We were told there were no documents. That is no longer true. Vandeputte testified that he never discussed a ⅓, ⅓, ⅓ sharing arrangement with Neal Kottke. His recent production belies that statement as well."

Mr. McHugh stated he would ask the trial court for a hearing date as to the dispute. In the last letter exchanged by counsel as to this issue, dated April 11, defense counsel stated he did not want to "create a war of letters." Defense counsel further stated that if Mr. McHugh wished to file a motion regarding these discovery issues, "I cannot stop you from doing so. We will strenuously oppose any [such] motion."

¶ 16 On May 2, 2011, the date set for the parties to exchange exhibits, defense counsel served a list of 254 proposed trial exhibits on plaintiffs. On that date, Mr. McHugh sent defense counsel an e-mail containing a list of 11 categories or groups of exhibits that plaintiffs intended to offer at trial. Plaintiffs' exhibit groups, for the most part, covered documents that had been previously produced through discovery or were exhibits used at depositions or in briefing the motions for summary judgment. Plaintiffs' exhibits did include a damages calculation spreadsheet that had not been previously produced but was prepared by plaintiff Cronin and was intended to be used as a demonstrative exhibit at trial. Additionally, Mr. McHugh notified defendants that plaintiffs continued to believe that additional relevant documents needed to be produced, and he reserved the right to supplement the exhibit list should plaintiffs be successful on an anticipated motion to compel relating to defendants'

supplemental document productions.

¶ 17    In the e-mail, plaintiffs' counsel stated that he did not foresee any objection as to the authenticity of defendants' proposed 254 trial exhibits. Mr. McHugh suggested that because many of plaintiffs' trial exhibits were duplicative of defendants' exhibits, the parties should agree to a procedure that would expedite the use of exhibits at trial. Counsel further suggested, "[f]or ease of exhibit management, it may make the most sense to have one or more books of trial exhibits, since the case is initially to be tried to the court." Mr. McHugh ended the e-mail by stating that he intended to send defense counsel a list of stipulated exhibits "within the next two days" and that he intended "to arrange the documents chronologically in logically sequenced categories." He indicated that he "[l]ooked forward to discussing" the matters set forth in his e-mail with defense counsel.

¶ 18    In a May 3, 2011, letter, defendants' counsel objected to plaintiffs' failure to exchange exhibits as required by the order of December 17, 2010, and asserted that plaintiffs' "broad identification of categories of documents [made] it virtually impossible to review and determine whether there are any evidentiary objections." Nonetheless, defense counsel set forth objections to some of the categories of exhibits while also indicating that there were no objections as to other categories. In the letter, defense counsel did not respond to plaintiffs' counsel's suggestions as to the coordination of trial exhibits.

¶ 19    On May 6, 2011, plaintiffs filed a motion to compel discovery, just as they had forewarned in their April letters and May 2 e-mail to defendants. That motion included a request for a forensic examination of Kottke's computers based upon defendants' supplemental production of documents. On May 9, 2011, at the time set for the trial conference, the trial court struck defendants' motion to compel as "untimely and in violation of the orders of this court."[1] In opposing the motion to compel, defendants had apparently raised the fact that the trial judge who had first presided over the case had entered an order on November 14, 2007, stating: "The parties are granted leave to file motions to compel on or before November 30, 2007."

¶ 20    On May 9, the court also allowed defendants leave to file a motion for sanctions pursuant to Illinois Supreme Court Rule 219 (Ill. S. Ct. R. 219 (eff. July 1, 2002)), having found plaintiffs failed to file a trial memorandum, and set a hearing date of May 11, 2011.

¶ 21    Accordingly, on May 10 defendants filed a motion for sanctions seeking only one possible sanction–dismissal with prejudice pursuant to Supreme Court Rule 219(c)(v). Ill. S. Ct. R. 219(c)(v) (eff. July 1, 2002) (which provides that a party's claims may be dismissed with or without prejudice as a sanction for unreasonably failing to comply with discovery rules or orders). Defendants argued that plaintiffs had acted in bad faith by failing to file a trial memorandum by May 6, identify and exchange exhibits by May 2, participate in a process to stipulate to facts as proposed in defendants' April 15 letter, name an expert to

---

[1]The motion to compel is not included in the record on appeal. There is no transcript of the proceedings held on May 9, 2011. Our discussion of the motion to compel is guided by other pleadings, exhibits and transcripts that are in the record.

support the damage calculations set forth in plaintiffs' exhibit produced on May 2, and by filing a "spurious" and untimely motion to compel. Defendants argued that these failures and actions had prejudiced them in that they would "be required to try this case based on speculation and surmise." The motion included defendants' May 3 response, but did not attach plaintiffs' May 2 e-mail as an exhibit.

¶ 22    Plaintiffs did not file a written response to the motion. Instead, on the same day, May 10, 2011, at 4:26 p.m., Mr. McHugh sent defense counsel an e-mail attaching plaintiffs' trial memorandum, which included, as required by the standing order, the estimated length of the trial, a short statement of the case, a list of potential witnesses, a statement of stipulated facts, a statement that plaintiffs did not intend to offer responses to Rule 216 requests for admission, an exhibit list, an affidavit of Rule 237 compliance, Rule 213(f) (Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007)) disclosures and deposition transcript as to their expert, Howard Schneider, and a statement of applicable legal principles. As to a jury, plaintiffs stated they "have demanded trial by jury, since the remedy they seek is ultimately monetary damages [and] *** restitution for what was withheld from them." Plaintiffs' list of nine potential witnesses included plaintiffs' disclosed expert, Mr. Schneider, plaintiffs Cronin and Anderson, Neal Kottke, defendant Vandeputte, and employees of Kottke. With the exception of the expert Mr. Schneider, plaintiffs' witnesses were also listed as potential witnesses in defendants' final trial memorandum. All of plaintiffs' witnesses had been deposed.

¶ 23    The trial memorandum's exhibit list delineated 41 trial exhibits, including business records of defendants, documents that had been exhibits to the summary judgment motions, and exhibits that also were listed as defendants' trial exhibits. Plaintiffs' trial exhibit 38 was the damages calculation document that had been served on defendants along with the May 2, 2011, e-mail. Mr. McHugh stated that duplicates of the exhibits would be sent "immediately," and hard copies would be delivered to defendants by the end of the business day.

¶ 24    At the hearing on May 11, 2011, defendants presented arguments as set forth in their written motion for sanctions and further argued that plaintiffs' "last minute" trial memorandum raised a new damages claim based on unjust enrichment; indicated a jury was requested; wrongfully stated there were no Rule 237 issues when defendants, by letter, had requested plaintiffs produce the originals of two e-mails; and offered confusing stipulations of facts. They claimed prejudice in their trial preparation and that plaintiffs had an unfair advantage because "defendants did everything they were supposed to do." Defendants described plaintiffs' conduct as "contumacious."

¶ 25    Mr. McHugh, in turn, apologized both to the court and to defense counsel and addressed his failure to abide by the court's order. He explained:

> "My judgment was clouded because of the discovery dispute. I accept responsibility for that. It was not meant to be contumacious with the Court.
>
> It went to what we believe was the heart of our case ***."

Mr. McHugh requested that any sanctions "be visited upon me. Not my clients." Mr. McHugh denied he filed the motion to compel as a tactical matter, or as a form of

"gamesmanship." He said he felt bound to resolve this discovery dispute for his clients.

¶ 26    Mr. McHugh stated further that he had driven back to Toledo, Ohio, after the May 9 hearing on plaintiffs' motion to compel, and "remembered the words the Court told me. That this was scandalous in her view." Having been admonished by the court, he "immediately went back to the office," worked through the night,"gathered all the exhibits," prepared a trial memorandum and sent it to defendants' counsel the next day. Mr. McHugh hoped that, in this way, "any prejudice I might have caused by failing to abide by the pre-trial memorandum order could be mitigated."

¶ 27    Although arguments were presented at the hearing, the record does not include any review or consideration of plaintiffs' exhibit list, trial memorandum, witness list, or May 2 e-mail. There were no determinations or factual findings on such issues as, whether plaintiffs' exhibits were previously disclosed or duplicative, whether there were objections to defendants' exhibits, or whether plaintiffs were raising a new claim of damages based on unjust enrichment. The exact nature and extent of the prejudice to defendants, other than delay, was not defined with particularity by the court.

¶ 28    After hearing arguments, the trial judge explained the significance of her trial procedures:

> "I can't imagine a more vital time for the Court or counsel. It's expensive. In this Court trials are conducted in the afternoon. I would have to open the court on weekends given the trial schedule that I have to reschedule matters for this year."

The judge explained, given the court's scheduling limitations and the need for litigants to prepare for trial, that the procedures set forth in the standing order and court-ordered deadlines required strict compliance, saying:

> "To emphasize that and make sure that the trial date is one that's going to be observed, I have relatively exacting requirements of what needs to be in a pre-trial order, what the schedule is in advance of the final pre-trial conference, which is all designed to have the parties pretty much ready for trial, as well as the Court.
>
> So, this is where we are. When we look at what the deadlines were on the December 17 order, which was entered almost five months ago now, there were very specific deadlines for purposes of exchanging documents, presenting objections, telling the Court what those objections were, also so that the Court could be prepared to rule, and the parties would have thereafter one week to prepare for their trial.
>
> None of this was complied with on the part of the Plaintiffs."

¶ 29    As to whether dismissal with prejudice would be an appropriate sanction, the judge stated:

> "I recognize that sanctions under the Supreme Court Rule are designed to be remedial. In this case, I really have struggled with whether or not there is some other possibility other than to dismiss plaintiffs' claims, bar the evidence, it seems to me to get back to the same place.
>
> I don't think an extension of time is justified by any stretch of the imagination.

* * *

In my view, if ever there was a case that warrants the sanction of barring these causes of action, I'm having a hard time determining what it would be.

* * *

I don't know how to remedy this situation, because at this point I don't have another week to conduct a trial. ***

I think in this case, their request for sanctions, barring these causes of action is appropriate."

The trial court entered an order granting defendants' motion for sanctions pursuant to Rule 219(c)(v), striking plaintiffs' pleadings, and dismissing the suit with prejudice based on the reasons it expressed orally at the hearing.

¶ 30    Plaintiffs retained new counsel and moved to vacate the dismissal order. Plaintiffs argued that: (1) defendants had not demonstrated prejudice resulting from any noncompliance with the final trial procedures, (2) plaintiffs were unaware of their counsel's actions and should not be punished, and (3) lesser sanctions were available. Plaintiffs, in affidavits, stated they had no knowledge of Mr. McHugh's failure to timely exchange trial exhibits and file a trial memorandum, and had not been part of any decision to file the motion to compel. After hearing arguments, the court on September 15, 2011, entered an order which denied the motion "for the reasons stated by the court on the record."

¶ 31    At the hearing, the trial court stated that she had "reviewed the sanctions or the factors that I'm required to consider." The court went on to state:

"One of the factors that I considered is the chance of plaintiffs' future compliance. *** [h]aving seen no real efforts at getting the case prepared for trial for a trial date that had been set five months earlier, I did not consider that there was a great deal of promise that any of the Court's orders in the future were going to be complied with. ***

* * *

*** I considered matters like shall I exclude proof, shall I bar certain claims, et cetera, et cetera. I couldn't see the difference between that and dismissal of the action. Barring evidence of a material nature or barring claims seems to me would have ultimately resulted in the same action. In my view, the actions and the factors that were presented to the Court, as I saw them, not necessarily as they've been described here were significant, egregious violations that resulted in prejudice to the defendants, and that certainly resulted in a disruption of the Court's docket, and there was no excuse offered whatsoever. I don't see a basis to vacate my earlier order."

Plaintiffs timely appealed.

¶ 32                                     II. ANALYSIS

¶ 33    On appeal, plaintiffs argue the trial court failed to: (1) apply the applicable factors or standards for the imposition of a sanction of dismissal with prejudice, (2) make the required findings with specificity as required under Illinois Supreme Court Rule 219(c) (Ill. S. Ct. R. 219(c) (eff. July 1, 2002)) (providing that when a sanction is imposed under the rule, "the

judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order"), and (3) consider lesser sanctions which would have addressed any prejudice. Before addressing such concerns, we first consider whether the trial court had authority, under Rule 219 or otherwise, to enter a dismissal with prejudice based upon the conduct at issue.

¶ 34                                    A. Trial Court's Authority

¶ 35     Rule 219(c) "authorizes a trial court to impose a sanction *** upon any party who unreasonably refuses to comply with any provisions of this court's discovery rules or any order entered pursuant to these rules." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998). The rule "outlines a nonexclusive list of sanctions" that may be imposed, including the dismissal of the offending party's suit with prejudice. *Donner v. Deere & Co.*, 255 Ill. App. 3d 837, 841 (1993). "The sanctions authorized under Rule 219 are intended to combat abuses of the discovery system and to maintain the integrity of our court system." *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1075 (2001). Under Rule 219, the trial court must choose a sanction that will promote discovery, not impose punishment on a litigant. *Wilkins v. T. Enterprises, Inc.*, 177 Ill. App. 3d 514, 517 (1988). "A just order of sanctions under Rule 219(c) is one which, to the degree possible, insures both discovery and a trial on the merits." *Shimanovsky*, 181 Ill. 2d at 123.

¶ 36     We believe there is at least a question whether Rule 219(c) squarely applies to the specific conduct–plaintiffs' failure to file a trial memorandum–which gave rise to the motion for sanctions. In seeking dismissal with prejudice, defendants did argue that plaintiffs' conduct–*i.e.*, the prior conduct during the discovery process discussed above–filing a motion to compel on the eve of trial and presentation of a damages calculation exhibit which had not been previously disclosed–should be considered in determining the seriousness of plaintiffs' conduct, the resulting prejudice to defendants, and the need for a severe sanction. However, the thrust of the motion was that the dismissal was warranted because plaintiffs failed to comply with the court's procedures as to trial preparation, as reflected in the court's standing order and the scheduling order entered in this case.

¶ 37     In *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48 (1995), our supreme court cautioned against a narrow interpretation of Rule 219. In that case, the trial court had dismissed a cause of action with prejudice based in large part on plaintiffs' repeated violations as to pleading orders. *Id*. at 60. The appellate court found that Rule 219 did not apply to "repleading matters that have previously been stricken." *Id*. at 60-61. The supreme court found that "the scope and procession of discovery may depend on the court's orders regarding the pleadings." *Id*. at 64. The court rejected the limited interpretation given the rule by the appellate court and concluded that the plaintiffs' violations of pretrial pleading orders fell within the purview of Rule 219. *Id*. at 63; compare with *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460, 469 (2006) ("Rule 219 is not a basis for sanctioning conduct that occurs at trial.").

¶ 38     Plaintiffs here were charged with violations of the trial court's standing order, which included procedures for the expeditious adjudication of cases and the efficient and

-10-

streamlined presentation of evidence at trial. Implicit in the requirements set forth in the trial court's standing order as to the exchange of exhibits, the preparation of trial memoranda, and other final trial provisions are determinations that the parties had been compliant with discovery requests and orders and that there would be no unwarranted surprises at trial. We conclude that plaintiffs' claimed disregard of the trial court's scheduling order and its standing order for trial preparation falls within the purview of Rule 219.

¶ 39    Even if Rule 219 were inapplicable, however, the trial court possessed the power to enter sanctions, including a dismissal with prejudice, under these circumstances. In *Sander*, 166 Ill. 2d at 65, our supreme court found that apart from and independent of any authority granted by Rule 219(c), a trial court has the inherent authority to control its docket and impose sanctions for the failure to comply with court orders. "The recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural rules, and also to empower courts to control their dockets." *Id*. at 66; *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007) (inherent authority allows a court to "prevent undue delays in the disposition of cases caused by abuses of the litigation process"). Pursuant to this inherent power, a court may dismiss a cause of action with prejudice where a party has deliberately and contumaciously disregarded the court's authority. *Sander*, 166 Ill. 2d at 68.

¶ 40    We conclude that the trial court had authority–premised upon both Rule 219 and its inherent power–to enter a sanction of dismissal with prejudice and, therefore, we must now consider whether such a sanction was appropriate.

¶ 41                              B. Trial Court's Sanction Order

¶ 42    A sanction imposed under Rule 219 (*Shimanovsky*, 181 Ill. 2d at 123) or a court's inherent power (*Sander*, 166 Ill. 2d at 67) is reviewed under an abuse of discretion standard and will be reversed "when the record establishes a clear abuse of discretion" (*id*.).

¶ 43    We begin our analysis with the following observations. The trial judge in this case presides over a calendar of complex civil suits from filing to resolution and carefully set forth procedures in her standing order to assure the fair and efficient adjudication of the cases on her docket. When this case was ripe for trial, the judge and counsel determined trial dates which were convenient for all. Based on these trial dates, the judge then set a schedule for the exchange of exhibits and the filing of trial memoranda and a trial conference date.

¶ 44    Plaintiffs' counsel frustrated the provisions of the standing order and the court's scheduling order. In the end, the trial did not go ahead, leaving a gap in the court's calendar and defendants having prepared for a trial which did not then proceed. We do not approve of the fact that plaintiffs' counsel did not fully respect the procedures of a conscientious trial judge. However, the issue is not whether plaintiffs' counsel was "without fault," but whether a dismissal with prejudice was warranted under all the circumstances of this case. *White v. Henrotin Hospital Corp.*, 78 Ill. App. 3d 1025, 1027 (1979).

¶ 45    An order of dismissal with prejudice is a "drastic sanction" to be entered only "where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority." *Shimanovsky*, 181 Ill. 2d at 123 (and cases cited therein); *Adams v. Bath & Body*

-11-

*Works, Inc.*, 358 Ill. App. 3d 387, 395 (2005) (referring to dismissal with prejudice as the " 'death penalty' of sanctions"). Further, dismissal with prejudice is a sanction to be "employed only 'as a last resort and after all the court's other enforcement powers have failed to advance the litigation.' " *Id*. at 394 (quoting *Shimanovsky*, 181 Ill. 2d at 123). Because of the severity, "courts are reluctant to impose the sanctions of dismissal." *White*, 78 Ill. App. 3d at 1028; *Donner*, 255 Ill. App. 3d at 841 (sanction of dismissal "should be imposed reluctantly and only as a last resort when all other enforcement powers at the court's disposal have failed to advance the litigation"); *Gonzalez*, 369 Ill. App. 3d at 471 (sanction of dismissal with prejudice runs contrary to public policy of this state and the " 'underlying spirit of our system of civil justice' " that suits should be decided on their merits (quoting *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1054-55 (1998))). Notably, these concerns and requirements have been found to be applicable where dismissal is imposed as a sanction pursuant to either Rule 219 or the trial court's inherent authority. *Sander*, 166 Ill. 2d at 67-68; *Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.*, 128 Ill. App. 3d 763, 772-73 (1984).

¶ 46    A dismissal with prejudice will be reversed "if it will not cause a hardship for the parties to proceed to trial on the merits." *White*, 78 Ill. App. 3d at 1029.

¶ 47                                          1. Contumacious Action

¶ 48    In determining whether plaintiffs' counsel was guilty of contumacious actions, we consider that he did not fully comply with the trial court's scheduling order and standing order as to trial procedures and, in particular, the requirements as to the exchange of exhibits and preparation of a trial memorandum. There was not, however, a blatant and complete disregard of the court's authority on the part of plaintiffs' counsel. As to the exhibits, on May 2, the ordered deadline for exchanging exhibits, plaintiffs' counsel sent defendants an e-mail relating to proposed trial exhibits. This e-mail lacked detail as to plaintiffs' exhibits and did not actually include the exhibits, but did identify groups of exhibits. Defendants' motion for sanctions did not include or attach plaintiffs' counsel's May 2 e-mail. The May 2 e-mail was presented as an exhibit to plaintiffs' motion to vacate the dismissal. We cannot overlook that in this e-mail, plaintiffs' counsel stated that plaintiff' trial exhibits were largely duplicative of defendants' trial exhibits and, for the most part, had been previously disclosed. Additionally, plaintiffs' counsel made suggestions as to the parties' presentation of the exhibits at trial, indicated he had no anticipated objection as to the authentication of defendants' exhibits, volunteered to organize the trial exhibits, and suggested further discussions as to the exhibits. Plaintiffs' counsel did not fully comply with the provisions as to the identification and exchange of documents by May 2, but his conduct as to the exhibits procedures cannot be characterized as contumacious.

¶ 49    Plaintiffs' counsel also failed to file a trial memorandum on May 6, instead presenting a motion to compel further discovery which he believed was crucial to his clients' case. The motion was brought after defendants produced a large amount of documents in the months just before trial and after efforts to resolve the resulting dispute failed. Plaintiffs' counsel

appeared at the scheduled trial conference seeking the court's determination of this discovery issue. The motion was stricken as untimely and, therefore, no further discovery was ordered. Plaintiffs were then left without a trial memorandum. Plaintiffs' counsel, albeit after being orally admonished by the trial court and in the face of a motion for sanctions, served a lengthy trial memorandum–with exhibits–in a form which sought to comply with the standing order on May 10, six days before the trial date. Plaintiffs' counsel's decision to concentrate his efforts on gaining additional discovery, which he viewed as crucial, may have been misguided and his trial preparation may have been inadequate, but we cannot conclude that he acted contumaciously or deliberately refused to comply with the court's procedures.

¶ 50    In their brief before this court, defendants cite to cases where dismissals with prejudice were upheld in light of egregious misconduct. See *Big Three Food & Liquor, Inc. v. State Farm Fire & Casualty Co.*, 79 Ill. App. 3d 63 (1979); *Gayton v. Levi*, 146 Ill. App. 3d 142 (1986); *Higgens v. House*, 288 Ill. App. 3d 543 (1997).

¶ 51    In *Big Three*, 79 Ill. App. 3d at 68, the plaintiffs' suit was dismissed with prejudice where they showed "a deliberate, unwarranted, contumacious disregard of the rules and the court's orders since the inception of [the] cause of action." Specifically, the plaintiffs failed to comply with orders for filing amended pleadings and answering interrogatories, their counsel failed to appear on a court date and file responses to motions, and the case had been previously dismissed for failure to file an amended complaint as directed. *Id*. at 67-68.

¶ 52    In *Gayton*, 146 Ill. App. 3d at 151, the plaintiffs failed to respond to discovery requests in violation of court orders and been subject to a prior motion for sanctions. On a subsequent motion for sanctions, filed more than three months after the plaintiffs' discovery was due, the plaintiffs failed to attend a hearing on the motion. *Id*. at 146. The court entered an order of dismissal with prejudice which provided that the case would be reinstated should the plaintiffs tender discovery or provide a reasonable excuse for their noncompliance. *Id*. Almost 60 days later, the plaintiffs finally moved to vacate the dismissal and filed with the motion answers to interrogatories that were, in some ways, defective. *Id*. at 147. The motion to vacate was denied. *Id*. at 148.

¶ 53    In *Higgens*, 288 Ill. App. 3d at 545, a medical malpractice suit, the plaintiffs, "[o]n numerous occasions," failed to comply with defendants' requests to name an opinion witness and an order entered requiring the plaintiffs to name and present experts for depositions. Defendants then moved for summary judgment arguing that the plaintiffs, without expert opinions, could not meet their burden of proof. The plaintiffs did not respond to the motion or appear for the hearing. The trial court granted the motion for summary judgment and denied the plaintiffs' motion to vacate that judgment. *Id*. The appellate court affirmed the trial court's decision as to the summary judgment, but did not consider whether the motion for summary judgment could have been properly granted as a sanction for the plaintiffs' persistent violations of discovery procedures. *Id*. at 547. However, the appellate court affirmed the denial of the motion to vacate the summary judgment order "in light of the lack of diligence in the prosecution of this case." *Id*. at 548.

¶ 54    In each case cited by defendants, the plaintiffs exhibited a pattern of indifference over a

course of the litigation which defied the court's authority and, in *Big Three* and *Gayton*, there also had been prior sanction orders entered against the plaintiffs. See also *Koppel v. Michael*, 374 Ill. App. 3d 998, 1004 (2007) (in this case, cited by defendants here, a sanction of default was upheld against the defendants who "had been subject to 12 orders regarding their discovery noncompliance"); *Sander*, 166 Ill. 2d at 69 (dismissal with prejudice upheld where "during the final five months of this litigation, plaintiffs violated four separate court orders setting the deadlines for the filing of their amended complaint, failed to reply to [the defendant's] motion for protective order and continued to replead matters in the amended complaints that had been previously stricken by court order") *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955, ¶ 28 (case dismissed one year after discovery disclosure date where the plaintiffs failed to comply with numerous discovery requests and court orders setting discovery deadlines including dismissal order which gave 30 days to comply and dismissal would be vacated). Such deliberate, contumacious, and repeated disregard is not present here. Although defendants contend a sanction of dismissal may be imposed even where there has not been repeated misconduct, the above cases cited by defendants are factually inapposite and do not support the dismissal with prejudice entered against plaintiffs.

¶ 55       In seeking dismissal, defendants argued there *had* been repeated misconduct and listed a series of transgressions on the part of plaintiffs. Defendants maintained that plaintiffs conducted discovery in violation of the rules, were late with the settlement conference memorandum, brought a motion to compel beyond a set deadline, and had violated the court's procedures for trial preparation. We disagree that there was a pattern of misconduct throughout the course of this litigation which justified dismissal with prejudice.

¶ 56       Plaintiffs' conduct during the discovery stage of litigation and, as to the settlement conference, did not exhibit wilful defiance of judicial authority in the manner of the cases cited above. At the hearing on plaintiffs' motion to vacate the dismissal, the trial court indicated there had been some "foot dragging," but also acknowledged plaintiffs had not been "contumacious" and had not violated any court orders during the discovery process. We have carefully searched the record and found no indication that plaintiffs' manner of conducting discovery or pursuing the case was subject to any prior form of reprimand from the court, or even an expression of frustration. Plaintiffs' requests for extensions as to expert discovery were granted with no warnings as to future delay and no findings that the extensions were made in bad faith or without basis.

¶ 57       Further, plaintiffs' motion to compel may have been ill-timed, but on this record we cannot conclude it violated any deadline set by the court. Defendants rely on an order that stated the parties were "granted leave" to file motions to compel by a certain date, but this order did not set forth a strict deadline or cutoff for such motions. Plaintiffs were not barred by any rule or order–that we are aware of–to file a motion to compel based on defendants' supplemental discovery production during the period before trial. Although the trial court–at the hearing on plaintiffs' motion to vacate the dismissal order–expressed the view that plaintiffs' motion to compel "was a manufactured excuse not to go to trial" and was "not made in good faith," the factual basis for this belief was not developed in the record. In fact,

plaintiffs' counsel had stated in his letters to defense counsel that he did not want the dispute to result in a delay of the trial conference or the trial. During the hearing on the sanction motion, plaintiffs' counsel stated that the motion to compel was not brought for tactical reasons. Plaintiffs' counsel explained that the motion was not brought earlier because, until defendants produced these supplemental documents, he believed that the documents did not exist based on defendants' assertions.

¶ 58    Finally, we are not willing to find that every alleged individual violation of the scheduling order and standing order, as to final trial procedures raised by defendants, created a "pattern" of misconduct on the part of plaintiffs which could subject them to dismissal with prejudice. See generally *Mieszkowski v. Norville*, 61 Ill. App. 2d 289, 297 (1965) ("While we recognize that the rules of court must be observed if dockets are to be kept current, yet courts must, in a proper case, yield the procedural exactitudes to the more basic rules of fundamental fairness.").

¶ 59                              2. Dismissal as "Last Resort"

¶ 60    The sanction of dismissal with prejudice was the first sanction imposed against plaintiffs. The parties had completed fact and opinion discovery, pursued dispositive cross-motions for summary judgment, and engaged in settlement negotiations with the court. The case was dismissed five days before the first day set for trial and at the first scheduled trial. The sanction imposed did not coerce plaintiffs' counsel to comply with the standing order and the scheduling order as is the purpose for entering sanctions. Instead, the dismissal with prejudice deprived plaintiffs of an opportunity to pursue the merits of their claims which, up to the point at issue here, had been actively pursued. The dismissal order is thus contrary to the case law, which "requires that such a sanction should only be used as a last resort, the implication being that progressively harsher sanctions should be employed to achieve compliance." *Donner*, 255 Ill. App. 3d at 842.

¶ 61    Nor was it evident that any defiance of the court's final trial procedures, on the part of plaintiffs' counsel, would continue. After plaintiffs' motion to compel was denied and the trial court granted leave for plaintiffs to file a motion for sanctions, plaintiffs' counsel immediately returned to his Ohio office and prepared and served a trial memorandum and exhibit list by the next day.

¶ 62                                      3. Other Factors

¶ 63    Our review could perhaps end here, as we have determined that plaintiffs' counsel had not shown a "deliberate, contumacious, or unwarranted disregard" for the authority of the trial court (*R.M. Lucas Co.*, 2011 IL App (1st) 102955, ¶ 27), and the dismissal was not imposed as a "last resort" (*Donner*, 255 Ill. App. 3d at 842). However, case law shows that to determine whether there has been an abuse of discretion in the imposition of a sanction due to a discovery violation, "we must look to the factors that the trial court should have considered in deciding whether such a sanction was appropriate." *Smith*, 323 Ill. App. 3d at 1076. These factors, as modified to fit the case at hand, generally include whether the

-15-

offending party's conduct resulted in surprise to the adverse party; the extent of any prejudice that was caused to the adverse party; the diligence of the adverse party; and the good faith of the offending party. *In re Marriage of Booher*, 313 Ill. App. 3d 356, 359-60 (2000). No one factor is determinative. *Adams*, 358 Ill. App. 3d at 395. The decision as to whether a sanction was proper is " 'circumstance specific.' " *Gonzalez*, 369 Ill. App. 3d at 465 (quoting *Smith*, 299 Ill. App. 3d at 1052).[2] We conclude that the above-referenced factors do not weigh in favor of the dismissal with prejudice entered here.

¶ 64    At the hearing on the motion to reconsider, the trial court stated it had applied the relevant factors in determining that the sanction of dismissal was warranted. As to the factors of surprise and prejudice, however, the record is not fully developed. There was no review of the May 2 e-mail, either as to plaintiffs' attempt to meet the exhibit requirements or as to the statements therein that the parties' exhibits were largely duplicative and had been previously disclosed. There was no review or evaluation of plaintiffs' tardy trial memorandum to determine whether it met the requirements of the trial court's standing order. There was no testing of defendants' assertions that: (1) it was a "mystery" why plaintiffs presented a motion to compel instead of a trial memorandum at the trial conference; (2) they were surprised by the damages exhibit because it had not been disclosed through Rule 213 discovery; (3) plaintiffs' trial memorandum raised a new claim for unjust enrichment; and (4) plaintiffs were "demanding a jury trial for the first time."

¶ 65    The record does not support a conclusion that defendants were so surprised as to these matters that dismissal with prejudice was merited. As to plaintiffs' pursuit of the motion to compel, defendants were made aware of the existence of the discovery disputes arising from the supplemental responses through the exchange of letters and that, if not resolved, these disputes would be subject to a motion. Defendants were told by plaintiffs in the May 2 e-mail both that a motion to compel would be filed and that plaintiffs would supplement their exhibit list if successful on the motion to compel. Although there was confusion as to whether plaintiffs wished to pursue a jury trial, defendants were put on early notice as to the issue as the jury demand was made in the complaint. The extent of any surprise as to the unjust enrichment claim was not determined, but plaintiffs did refer to an unjust enrichment claim in their complaint and settlement conference memorandum. The damages exhibit at issue was prepared by plaintiff Cronin and not a retained expert and was to be a demonstrative exhibit only. We are without a factual basis to determine whether the exhibit should have been disclosed pursuant to Rule 213, or whether the foundation for the calculations had been revealed through other discovery.

¶ 66    As to prejudice, plaintiffs' failure to adequately meet the standing order's requirements as to the exchange of exhibits and their failure to prepare timely a trial memorandum and consider stipulations of fact may have harmed or hampered defendants' final preparation for

---

[2]While these factors are typically applied in the context of a sanction imposed for discovery violations (see *Booher*, 313 Ill. App. 3d at 359-60), we see no reason why they are not equally applicable to a sanction imposed pursuant to the trial court's inherent authority.

trial. However, we do not believe defendants suffered such a degree of injury or surprise that dismissal with prejudice was justified.

¶ 67　　Defendants had considerable knowledge and awareness of the basis of plaintiffs' suit. The case and plaintiffs' claims had been the subject of fact and expert discovery, aggressively litigated cross-motions for summary judgment, and a court-supervised settlement conference. Plaintiffs' witnesses had all been deposed and, significantly, the parties' fact witnesses were identical. Defendants' knowledge of the case allowed them to pursue summary judgment, respond to plaintiffs' motion for summary judgment, and prepare their own detailed settlement conference and trial memoranda. For these reasons, we cannot accept defendants' contention before the trial court that they would be forced to try the case "based on speculation and surmise," or their current argument that they would have been left to "shadowbox" at trial due to the various ways that plaintiffs' pretrial performance is claimed to have been deficient.

¶ 68　　The record reflects defendants were generally diligent and timely throughout the litigation and, in particular, as to the trial court's requirements for trial preparation and in bringing the motion for sanctions. However, we do note that their supplemental production of a large number of documents shortly before trial triggered a discovery dispute which–when it was not resolved by the attorneys–led to the eventual filing of plaintiffs' motion to compel. At the hearing on the motion for sanctions, Mr. McHugh revealed he had been overly distracted by this discovery issue and thought he had an obligation to his clients to uncover whether further relevant discovery existed. We do not believe defendants' late production of documents absolved Mr. McHugh's failure to abide by the trial court's trial preparation procedures, but we do consider the fact of the supplemental discovery production prior to trial in assessing whether imposition of so drastic a sanction was appropriate.

¶ 69　　As set forth above, we have concluded that plaintiffs' counsel did not exhibit deliberate and contumacious disregard of the court's authority. Similarly, based on this record, we cannot say plaintiffs' counsel acted in bad faith. The focus of the bad-faith factor has been a lack of an excuse. Defendants, and even plaintiffs themselves, through new counsel, suggest that Mr. McHugh should have had an "excuse" for his inadequate preparation for trial. The trial court stated that Mr. McHugh had not offered a "good excuse." Mr. McHugh, at the hearing on the motion for sanctions, said he could not "offer any excuse" for his failures, but confessed to getting caught up with the discovery dispute surrounding the supplemental discovery. The record showed he believed other documents–in particular, crucial e-mails that he had sought throughout the suit–had still not been produced. He further believed that the e-mails had relevance and importance to plaintiffs' claims. It was not an "excuse" in the nature of illness, emergency, or conflicts with other cases, but he confessed and the record supports that he was intent on resolving the discovery dispute instead of preparing a trial memorandum. Nonetheless, as no one factor should be determinative as to the proper imposition of a sanction, the lack of an acceptable "excuse" alone, under all the circumstances, would not justify the entry of dismissal with prejudice in this case.

¶ 70                              C. Proceedings Upon Remand

¶ 71       Defendants' motion for sanctions sought only one possible result; the dismissal of plaintiffs' suit with prejudice. For the reasons stated above, we have found that granting such drastic relief in this case was an abuse of discretion.

¶ 72       We further conclude that "it will not cause a hardship for the parties to proceed to trial on the merits." *White*, 78 Ill. App. 3d at 1029. Any issues as to plaintiffs' proposed trial exhibits, claims for damages, stipulations of facts, the jury demand, or objections to exhibits may be resolved in due course pursuant to the applicable rules of discovery, evidence, and procedure, as well as the trial court's standing order and any scheduling order which might be entered by the trial court upon remand.

¶ 73                                    III. CONCLUSION

¶ 74       For the foregoing reasons, the order striking plaintiffs' pleadings and dismissing the case with prejudice is reversed. This matter is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 75       Reversed; cause remanded.